Taras Kick, CA Bar No. 143379
Taras@kicklawfirm.com
Tyler J. Dosaj, CA Bar No. 306938
Tyler@kicklawfirm.com
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Tel: (310) 395-2988
Fax: (310) 395-2088

Attorneys for Plaintiffs and the Putative Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEMARIO PRESTON, RICHIE EDQUID, KAYTLIN ROQUE, VETTE GRAY, ANDREA ROSE BAKER, and ILIANA ZUNIGA, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br> v.<br><br>NAVY FEDERAL CREDIT UNION, and DOES 1-100,<br><br>Defendants. | **CASE NO.: 2:24-CV-08372 JGB(DTBX)**<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR**<br><br>(1)    Breach Of Contract, Including the Implied Covenant Of Good Faith And Fair Dealing;<br>(2)    Unjust Enrichment;<br>(3)    Money Had and Received<br>(4)    Violation of Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.;<br>(5)    Violation of The Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq*.; and,<br>(6)    Conversion.<br><br>**DEMAND FOR JURY TRIAL** |

---

1

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Demario Preston, Richie Edquid, Kaytlin Roque, Vette Gray, Andrea Rose Baker, and Iliana Zuniga ("Plaintiffs"), by and through their attorneys, hereby bring this class and representative action against Navy Federal Credit Union and DOES 1 through 100 (collectively "Navy Federal" or "Defendant").

## NATURE OF THE ACTION

1.     All allegations herein are based upon information and belief except those allegations which pertain to Plaintiffs or their counsel.  Allegations pertaining to Plaintiffs or their counsel are based upon, *inter alia*, Plaintiffs' or counsel's personal knowledge, as well as Plaintiffs' or counsel's own investigation.  Furthermore, each allegation alleged herein either has evidentiary support or is likely to have evidentiary support, after a reasonable opportunity for additional investigation or discovery.

2.     This is a class and representative action brought by Plaintiffs to assert claims in their own right, and in their capacity as the class representative of all other persons similarly situated, and in their capacity as private attorneys general on behalf of the members of the general public. Navy Federal wrongfully charged Plaintiffs and the Class Members fees related to their checking accounts.

3.     This class action seeks monetary damages, restitution, and injunctive relief due to Navy Federal's policy and practice to assess Overdraft ("OD") or Non-Sufficient Funds ("NSF") Fees on items that had previously triggered NSF Fees.

## PARTIES

4.     Plaintiff Demario Preston is a resident of Los Angeles, California and had a checking account with Navy Federal at all times relevant to the class action allegations.  Plaintiff Preston patronized Defendant's branches in California, received his Navy Federal account statements in California, initiated transactions on his Navy Federal account within California, and incurred the at-issue fees in California.

5.     Plaintiff Richie Edquid is a resident of San Diego, California and had a checking account with Navy Federal at all times relevant to the class action allegations. Plaintiff Edquid patronized Defendant's branches in California, received his Navy

Federal account statements in California, initiated transactions on his Navy Federal account within California, and incurred the at-issue fees in California.

6.     Plaintiff Kaytlin Roque is a resident of Palmdale, California and had a checking account with Navy Federal at all times relevant to the class action allegations. Plaintiff Roque patronized Defendant's branches in California, received her Navy Federal account statements in California, initiated transactions on her Navy Federal account within California, and incurred the at-issue fees in California.

7.     Plaintiff Vette Gray is a resident of San Diego, California and had a checking account with Navy Federal at all times relevant to the class action allegations. Plaintiff Gray patronized Defendant's branches in California, received her Navy Federal account statements in California, initiated transactions on her Navy Federal account within California, and incurred the at-issue fees in California.

8.     Plaintiff Andrea Rose Baker is a resident of Los Angeles, California and had a checking account with Navy Federal at all times relevant to the class action allegations.  Plaintiff Baker patronized Defendant's branches in California, received her Navy Federal account statements in California, initiated transactions on her Navy Federal account within California, and incurred the at-issue fees in California.

9.     Plaintiff Iliana Zuniga is a resident of Lake Forest, California and had a checking account with Navy Federal at all times relevant to the class action allegations. Plaintiff Zuniga patronized Defendant's branches in California, initiated transactions on her Navy Federal account within California, and incurred the at-issue fees in California.

10.     Based on information and belief, Defendant Navy Federal is a federally chartered credit union with its headquarters and principal place of business located in Vienna, Virginia.  Among other things, Navy Federal is engaged in the business of providing retail credit union services to consumers and businesses, including Plaintiffs and members of the putative classes, throughout the United States, including in California. Defendant knowingly and intentionally avails itself of California for its

FIRST AMENDED CLASS ACTION COMPLAINT

revenue and business, and makes itself subject to California laws. For example, its own website lists 35 physical Navy Federal Credit Union branches within 100 miles of Oceanside, California alone.  Exhibit L to Complaint. Further, Defendant on its own website states it has 13.8 million members.  Exhibit M to Complaint. On information and belief, Plaintiffs allege that the largest number of its members are in the State of California, and that no state has more members than California.  On information and belief, Plaintiffs allege that based on national demographic statistics, approximately 1.6 million of NFCU's 13.8 million members reside in California, more than in any other state, giving California overwhelming interest in the manner in which Defendant runs its business and treats Californians. Defendant also on its own website states it has more than $177 billion in assets.  (Exhibit B.) On information and belief, Plaintiffs allege that no state in the country is more responsible for these assets than California, and allege on information and belief that more than $20,790,000 of these assets arise from or belong to Californians.

11.     In addition, Navy Federal membership is restricted to those who serve or have served in the military and their families or members of their households. On information and belief, California has the highest number of former members of the military at 1,525,746, and also the highest number of current military members, that being about 180,000, which is also higher than any other state, and more than 50% higher than Virginia.

12.     While ostensibly a not-for-profit, member-owned credit union, Defendant's asset size dwarfs that of most banks. Further, as explained by the Independent Community Bankers of America ("ICBA") in its August 6, 2024 letter to the U.S. House of Representatives:

> Modern credit unions exploit a tax exemption created to "serve people of modest means" within defined fields of membership. **The largest credit union today, Navy Federal, has assets of $168 billion, dwarfing the size of a typical community bank with assets of less than $1 billion. The credit union tax exemption subsidizes multi-million-dollar**

FIRST AMENDED CLASS ACTION COMPLAINT

**executive pay, outsized marketing budgets, sports stadium naming rights, lavish headquarters, and increasingly, acquisitions of community banks rooted in their communities for decades.** Field-of-membership rules, once a check on credit union expansion, have been eroded by the National Credit Union Administration to the point of meaninglessness. Credit union practices include wealth management and financing of private aircraft. Pentagon Federal Credit Union recently has partnered with Goldman Sachs to finance luxury mixed-use developments in Washington, D.C. with an $847 million loan to develop Phase II of the DC Wharf. **This is not serving people of modest means.**

"Re: Community Bank Perspective on 2025 Tax Legislation," ICBA, Aug. 6, 2024 (available at https://www.icba.org/docs/default-source/icba/advocacy-documents/letters-to-congress/icba-letter-to-ways-and-means-main-street-tax-team.pdf?sfvrsn=3ac6e717_3, last visited Dec. 17, 2024) (emphasis added).

13. Without limitation, defendants DOES 1 through 100, include agents, partners, joint ventures, subsidiaries and/or affiliates of Navy Federal and, upon information and belief, also own and/or operate Navy Federal branch locations. As used herein, where appropriate, the term "Navy Federal" is also inclusive of Defendants DOES 1 through 100.

14. Plaintiffs are unaware of the true names of defendants DOES 1 through 100. Defendants DOES 1 through 100 are thus sued by fictitious names, and the pleadings will be amended as necessary to obtain relief against defendants DOES 1 through 100 when the true names are ascertained, or as permitted by law or by the Court.

15. There exists, and at all times herein mentioned existed, a unity of interest and ownership between the named defendants (including DOES) such that any corporate individuality and separateness between the named defendants has ceased, and that the named defendants are *alter egos* in that the named defendants effectively operate as a single enterprise, or are mere instrumentalities of one another.

16. At all material times herein, each defendant was the agent, servant, co-conspirator and/or employer of each of the remaining defendants, acted within the

5
FIRST AMENDED CLASS ACTION COMPLAINT

purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants. However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

17.    Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

18.    As to the conduct alleged herein, each act was authorized, ratified or directed by Defendant's officers, directors, or managing agents.

## VENUE AND JURISDICTION

19.    This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (iii) there is minimal diversity because at least Plaintiffs and defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.    Venue is proper in this District, among other reasons, pursuant to 28 U.S.C. § 1391(b)(2). In addition, Defendant conducts substantial business in this District including by operating retail branches in this District such that Defendant resides in this District pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

**A. Navy Federal Settled a Class Action Lawsuit Regarding the Retry NSF Fees At Issue Here, But Excluded At Least Several Months From That Settlement And Also Continued Assessing Such Fees In Breach of Its**

**Contracts.**

21.    As set forth below, the conduct at issue in this case is Defendant's assessment of Overdraft or NSF fees on items that had previously triggered NSF fees ("Retry NSF Fees") on the accounts of its members despite contractual promises to assess only one fee per item.

22.    Defendant recognizes that the Retry NSF practice is unfair and deceptive and constitutes a breach of its contracts with its customers. That is why, on October 5, 2020, Defendant entered into a $16 million settlement agreement with the plaintiff in *Lambert v. Navy Federal Credit Union*, No. 1:19-CV-103-LO-MSN (E.D. Va.), which alleged the improper assessment of the same Retry NSF Fees at issue here, while the case was pending on appeal to the Fourth Circuit, after full briefing and shortly before arguments.  Rather than allow those arguments to go forward, Defendant instead paid $16 million to avoid the Circuit Court's opinion.

23.    As part of the $16 million *Lambert* settlement, class members agreed to release claims "during the Class Period that were or could have been alleged in the Action ("Released Claims") relating to the assessment of Representment NSF Fees." (*Lambert* Settlement Agreement ¶ 84.) The "Class Period" in *Lambert* was defined as January 28, 2014, through the date of Preliminary Approval, namely October 27, 2020. (*Lambert* Settlement Agreement ¶ 16.)

24.    "Representment NSF Fees" were defined in the Settlement agreement as follows:

> "Representment NSF Fees" means the second or third NSF Fee charged to an Account Holder when a Settlement Class member's merchant has re-presented a debit item or check to Navy Federal for payment (after an initial return by Navy Federal for insufficient funds), and where the debit item or check is again returned by Navy Federal due to insufficient funds, resulting in an additional NSF Fee or NSF Fees.

(*Lambert* Settlement Agreement ¶ 26.)

25.    The *Lambert* Settlement Agreement for the class period of January 28,

FIRST AMENDED CLASS ACTION COMPLAINT

2014 through October 27, 2020, was finally approved on April 8, 2021. The *Lambert* class members subsequently received partial refunds of the at-issue fees under the terms of that Settlement Agreement.

26.     Defendant Navy Federal Credit Union attempted to materially change its contract terms regarding this practice in its January 2021 Consumer Account Agreement and its September 2022 Business Account Agreement.  However, after the certified class period of October 27, 2020 in *Lambert* had ended, and before Defendant's even arguable best-case scenario of its new January 2021 and September 2022, contract terms concerning this practice having become effective, Defendant continued assessing Retry NSF Fees against the class members in the instant case pursuant to the same contractual terms that had been effective during the *Lambert* class period of January 28, 2014 through October 27, 2020. These post-*Lambert* Class Period customers never received compensation for the Retry NSF Fees they incurred, despite having been subject to the same conduct under the same contractual terms as the *Lambert* class members, including but not limited to during the time period between when the *Lambert* class period ended and when the new Navy Federal contract terms on this issue even under Navy Federal's best-case scenario arguably first became effective.

**B. Regulators Have Universally Condemned the Retry NSF Fee Practice and Have Forced Financial Institutions to Pay Hundreds of Millions of Dollars in Consumer Redress and Civil Penalties As a Result of the Practice.**

27.     The condemnation of the practice at issue by federal government regulators is prolific and universal. For example, the Consumer Financial Protection Bureau ("CFPB") is actively seeking to prevent financial institutions like Navy Federal from ever engaging in the Retry NSF Fee practice. As stated in the CFPB's 2023 Supervisory Highlights:

> Some institutions assess NSF fees when a consumer pays for a transaction with a check or an Automated Clearing House (ACH) transfer and the

FIRST AMENDED CLASS ACTION COMPLAINT

transaction is presented for payment, but there is not a sufficient balance in the consumer's account to cover the transaction. After declining to pay a transaction, the consumer's account-holding institution will return the transaction to the payee's depository institution due to non-sufficient funds and may assess an NSF fee. The payee may then present the same transaction to the consumer's account-holding institution again for payment. If the consumer's account balance is again insufficient to pay for the transaction, then the consumer's account-holding institution may assess another NSF fee for the transaction and again return the transaction to the payee. Absent restrictions on assessment of NSF fees by the consumer's account-holding institution, this cycle can occur multiple times.

Supervision found that institutions engaged in unfair acts or practices by charging consumers multiple NSF fees when the same transaction was presented multiple times for payment against an insufficient balance in the consumer's accounts, potentially as soon as the next day. **The assessment of multiple NSF fees for the same transaction caused substantial monetary harm to consumers, totaling millions of dollars. These injuries were not reasonably avoidable by consumers, regardless of account opening disclosures. And the injuries were not outweighed by countervailing benefits to consumers or competition**.

Examiners found that institutions charged several million dollars to tens of thousands of consumers over the course of several years due to their assessment of multiple NSF fees for the same transaction. The institutions agreed to cease charging NSF fees for unpaid transactions entirely and Supervision directed the institutions to refund consumers appropriately. Other regulators have spoken about this practice as well.

Supervisory Highlights Junk Fees Special Edition, Consumer Financial Protection Bureau, at 5-6 (March 8, 2023) (emphasis added.)

28.   For further example of the federal government's perspective on the practice at issue in this case, the CFPB issued a public Consent Order on July 11, 2023, as follows:

Consumers could not reasonably avoid the Re-Presentment NSF Fees assessed under Respondent's policy. Whether or not consumers expected or understood that Respondent would charge a new $35 fee each time it

returned the same transaction, they were not reasonably able to avoid the fee because they did not know when merchants would re-present transactions, which could occur as soon as the next day. Nor could consumers generally stop payments or revoke authorizations on transactions easily or in time, and by attempting to stop payment they would incur substantial additional costs, even if the stop payment was untimely or otherwise unsuccessful. Further, the amount that consumers owed increased with each subsequent NSF Fee, adding to the difficulty for some consumers of avoiding the injury caused by these fees.

*Bank of America, N.A.*, Consent Order, File No. 2023-CFPB-0006 at ¶ 19 (July 11, 2023). The Consent Order required Bank of America to refund *all* of the re-presentment fees at issue that it had not already refunded, "providing not less than $80,400,000 in total consumer redress" and to pay "a civil money penalty of $60,000,000" to the CFPB. *Id.* at ¶¶ 27, 35.

29. The CFPB is not the only federal regulator which has condemned this practice in which Navy Federal engages. Specifically, the Office of the Comptroller of the Currency ("OCC") has condemned the Retry NSF Fee practice and warned financial institutions that the Retry NSF Fee practice creates a heightened risk of violating section 5 of the Federal Trade Commission (FTC) Act (Section 5), which prohibits unfair or deceptive acts or practices, even when it is properly contracted for:

When a bank receives a check or automated clearing house (ACH) transaction that is presented for payment from a customer's deposit account, and the account has insufficient funds to pay the check or ACH transaction, the bank may decline to pay the transaction and charge the customer an NSF fee. If the same check or ACH transaction is presented to the bank again and the customer's account still has insufficient funds, some banks will either again return the transaction unpaid and assess an additional NSF fee or pay the transaction and assess an overdraft fee. **This practice of charging an additional fee each time a single transaction (e.g., ACH transaction or check) is presented for payment by a third party without further action by the customer contributes to customer costs in circumstances in which those customers cannot reasonably avoid the additional charges**. Through ongoing supervision, the OCC has identified concerns with a bank's assessment of an additional fee on a representment transaction, resulting

in findings in some instances that the practice was unfair and deceptive. Disclosures may be deceptive, for purposes of Section 5, if they do not clearly explain that multiple or additional fees (NSF or overdraft) may result from multiple presentments of the same transaction. **Even when customer disclosures explain that a single check or ACH transaction may result in more than one fee, a bank's practice of assessing fees on each representment may also be unfair, for purposes of Section 5, if consumers cannot reasonably avoid the harm and the other factors for establishing unfairness under Section 5 are met. Consumers typically have no control over when a returned ACH transaction or check will be presented again and lack knowledge of whether an intervening deposit will be sufficient to cover the transaction and related fees**. "Overdraft Protection Programs: Risk Management Practices," OCC Bulletin 2023-12, April 26, 2023 (available at https://www.occ.treas.gov/news-issuances/bulletins/2023/bulletin-2023-12.html, last visited on February 27, 2024) (emphasis added.)

30. In addition to the CFPB and the OCC condemning this practice in which Navy Federal engages which is the subject of this lawsuit, yet another federal regulator also has condemned this practice. Specifically, the FDIC, in August 2022, issued a Supervisory Guidance stating that financial institutions engaged in the practice of "charging of multiple NSF fees arising from the same unpaid transaction" are at "heightened risks of violations of Section 5 of the Federal Trade Commission (FTC) Act" because "the failure to disclose material information to customers about re-presentment and fee practices has the potential to mislead reasonable customers." Supervisory Guidance on Multiple Re-Presentment NSF Fees, Federal Deposit Insurance Corporation, at 1 (August 2022). The agency then provided guidance on what it means to "clearly and conspicuously disclos[e] the amount of NSF fees to customers and when and how such fees will be imposed"—which includes disclosing "[i]nformation on whether multiple fees may be assessed in connection with a single transaction when a merchant submits the same transaction multiple times for payment." *Id.*

31. This followed the FDIC's promulgation in March 2022 regarding this same Retry NSF Fee assessment practice in its Consumer Compliance Supervisory Highlights, in which it stated:

> During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Some disclosures and account agreements explained that one NSF fee would be charged "per item" or "per transaction." These terms were not clearly defined, and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive.

Consumer Compliance Supervisory Highlights, Federal Deposit Insurance Corporation, at 8-9 (March 2022).

32. Similarly, the National Credit Union Administration ("NCUA"), through Chairman Todd M. Harper, has criticized Retry NSF Fees as "antithetical to the purpose of credit unions":

> In my view, overdraft fee programs that allow for authorizing positive and settling negative, permit the charging of multiple represent fees, and incorporate **repeated NSF fees are antithetical to the purpose of credit unions, detrimental to members, and inconsistent with the credit union system's statutory mission of meeting the credit and savings needs of consumers**, especially those of modest means.

"NCUA Chairman Todd M. Harper Remarks at the Indiana Credit Union League," May 19, 2023 (available at https://ncua.gov/newsroom/speech/2023/ncua-chairman-todd-m-harper-remarks-indiana-credit-union-league, last visited on February 27, 2024) (emphasis added).

**C. Defendant Breached Its Contracts With Plaintiffs and Class Members By Assessing Retry NSF Fees Against Their Accounts.**

33. Plaintiffs' Navy Federal checking accounts are governed by the Account Documents, including the Consumer Account Agreement attached hereto as Exhibit

FIRST AMENDED CLASS ACTION COMPLAINT

A, and the Fee Schedule, attached hereto as Exhibit B, in effect during the period relevant to this litigation.

34.   The Account Documents provide the general terms of Plaintiffs' relationship with Navy Federal and therein Navy Federal makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

35.   The Account Documents effective during the Class Period stated that fees will only be assessed once per transaction or single item when in fact Navy Federal regularly charges two or more fees per transaction or single item even though a customer only requested the payment or transfer once.

36.   Navy Federal's Account Documents during the Class Period indicated that a single fee can be assessed on checks, ACH transactions, and electronic payments.

37.   Navy Federal's Account Documents during the Class Period stated that it will charge a single fee for each item or transaction that is returned due to insufficient funds.

38.   According to the Fee Schedule effective during the Class Period, Defendant was permitted to charge a singular NSF "fee" in the amount of $29.00 for "checks and ACH debit" as follows:

> Non-sufficient funds fee for checks and
ACH debit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $29.00

> Optional Overdraft Protection Service
transaction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $20.00

October 2020 Fee Schedule, Ex. B to Complaint at 1.

39.   A commonsense interpretation of this contract term is that a singular fee would be assessed on each check or ACH transaction regardless of the number of times that check or transaction was resubmitted for payment.

FIRST AMENDED CLASS ACTION COMPLAINT

40. The same item or transaction cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiffs took no action to resubmit it.

41. Likewise, the Consumer Account Agreement effective during the Class Period, reinforces this commonsense understanding, stating that a single "fee" will be assessed on each "refused check," not per refusal of the same check:

> Navy Federal is authorized to refuse checks that exceed funds available in the checking account. A fee will be assessed in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each refused check.

October 2020 Consumer Account Agreement, Ex. A to Complaint at 4.

42. Similarly, regarding ACH transactions, the Consumer Account Agreement plainly states that a single "fee" may be assessed "for each returned debit item" and not per return of the same debit item:

> Navy Federal may return debits to the checking account (e.g., an ACH payment) if the amount of the debit exceeds funds available in the checking account. A fee may be assessed in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each returned debit item.

October 2020 Consumer Account Agreement, Ex. A to Complaint at 4.

43. Defendant's Business Account Agreement contained terms materially identical to that in the Consumer Account Agreement discussed above during the Class Period. July 2020 Business Account Agreement, Ex. E to Complaint at 3.

44. The Account Documents effective during the Class Period never define the term "item" in a manner that suggests the reprocessing or resubmission of an "item" is itself an "item" or "transaction." Indeed, the term "item" is overwhelmingly used to refer to checks or similar instruments that effectuate the accountholder's initial order or instruction for payment.

45. There is zero indication anywhere in the Account Documents that the same check or item is eligible to incur multiple NSF Fees, or an NSF Fee followed by

FIRST AMENDED CLASS ACTION COMPLAINT

an OD Fee.

46. Even if Navy Federal reprocesses an instruction for payment, it is still the same item. Navy Federal's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

47. The Account Documents described never discuss a circumstance where Navy Federal may assess multiple fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

48. In sum, Navy Federal promised that one fee will be assessed per check or electronic payment, and these terms must mean all iterations of the same instruction for payment. As such, Navy Federal breached the contract when it charged more than one fee per item.

49. Reasonable customers understand any given authorization for payment to be one, singular item, payment, or transaction.

50. Customers reasonably understand, based on the terms of the Account Documents and Navy Federal's other documents, that Navy Federal's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF fees or an OD fee if the transactions is later paid. In other words, it is always the same item or transaction.

51. In spite of these contractual promises, Defendant nevertheless assessed multiple NSF fees, or an OD fee following the assessment of an NSF fee, on the same check or ACH transaction on the accounts of its members during the Class Period.

52. Defendant is aware that the contractual terms discussed above did not permit it to assess Retry NSF Fees. That is why, after the end of the Class Period, it attempted to materially change its Consumer Account Agreement starting at some point in January 2021 to explicitly contract for the Retry NSF Fee practice for the first time, as follows:

FIRST AMENDED CLASS ACTION COMPLAINT

Navy Federal is authorized to refuse checks that exceed funds available in the checking account. Each time we refuse a check for insufficient funds, we will assess a nonsufficient funds ("NSF") fee in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each refused check. A financial institution where you deposit a check, or a payee, may resubmit the check to Navy Federal even if we have already refused the check for insufficient funds in the checking account. If the resubmitted check again exceeds the funds available in the checking account, Navy Federal again will refuse the check, resulting in an additional NSF fee. Thus, you may be charged multiple NSF fees in connection with a single check that has been refused for insufficient funds multiple times.

…

Navy Federal may return debits (e.g., ACH payments) submitted for payment against the checking account if the amount of the debit exceeds the funds available in the checking account. Each time we return a debit for insufficient funds, we will assess a NSF fee in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each returned debit item. The entity that submitted the debit may submit another debit to Navy Federal even if we have already returned the prior debit for insufficient funds in the checking account. If the resubmitted debit again exceeds the funds available in the checking account, Navy Federal again will return the debit, resulting in an additional NSF fee. Thus, you may be charged multiple NSF fees in connection with a single debit that has been returned for insufficient funds multiple times.

January 2021 Consumer Account Agreement, Ex. C to Complaint at 4–5.

53.    Similarly, the February 2021 Fee Schedule states the following for the first time regarding NSF fees:

Non-sufficient funds fee (NSF) charged each time a check or ACH debit is presented and returned because of insufficient funds.

February 2021 Fee Schedule, Ex. D to Complaint at 1.

54.    Like the Consumer Account Agreement, Defendant attempted to materially change its Business Account Agreement following the Class Period to contract for the Retry NSF Fee practice, starting in September 2022. September 2022 Business Account Agreement, Ex. F to Complaint at 4–5.

55.    Discovery will be necessary to determine when the contractual

16

FIRST AMENDED CLASS ACTION COMPLAINT

documents containing these materially different contract terms regarding this practice were disseminated to class members, including Plaintiffs, and when if ever they became effective as binding contracts. Plaintiffs will end the Class Period on the date or dates on which the documents contracting for the Retry NSF Fee practice became effective as binding contracts on Plaintiffs and the Class Members. In ending the Class Period on this date or dates, Plaintiffs do not concede that the new contract terms regarding this Retry NSF Fee practice allows the practice necessarily, but Plaintiffs end their class period in this lawsuit at that time.

56.    Plaintiffs did not receive any notice that the Account Agreement or Fee Schedule were purportedly being amended regarding the Retry NSF Fee practice, nor did Plaintiffs receive a copy of the January 2021 Consumer Account Agreement or February 2021 Fee Schedule from Defendant. Further, Plaintiffs did not receive notice of the *Lambert* settlement.

57.    Other banks and credit unions that engage or engaged in this abusive predatory practice of charging more than one fee for the same item would attempt to contract for it by including in their contract terms that  they would charge for the same item each time it was presented, typically including terms such as "per presentment" or "per each presentment",  and often also add far more material in explaining this practice to be sure their contracts are not ambiguous. While Plaintiffs do not concede that these improved contractual terms would necessarily allow such a predatory practice to go unaddressed, the following are some examples from other banks and credit unions that make clear in their contracts that this type of multiple fee practice would be imposed on their customers or members:

58.    Air Academy Federal Credit Union contracts for its NSF Fee as follows, distinguishing between fees that are assessed "per item" and the NSF Fee, which is charged "per presentment:

> Deposit Drafts Returned Unpaid (when payor and payee are the same) $75.00 per item

FIRST AMENDED CLASS ACTION COMPLAINT

|                               |                          |
|-------------------------------|--------------------------|
| Premium Overdraft Service     | $32.00 per presentment*  |
| Non-Sufficient Funds (NSF) Fee| $32.00 per presentment** |
| ACH Representment Fee         | $32.00 per presentment   |

*See* https://www.aafcu.com/fees.html (emphasis added) (last visited on April 11, 2024).

59.    Central Pacific Bank contracts unambiguously:

Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*See* https://www.cpb.bank/media/wr4pavge/miscellaneous-fee-schedule-update.pdf (last visited April 11, 2024).

60.    Community Bank, N.A. unambiguously contracts: "We cannot dictate whether or not (or how many times) a merchant will resubmit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**"

*See* https://cbna.com/u/infographics/Overdraft_Unavailable-Funds-Practices-DisclosureT-428-Rev-2.16.21-Effective-5.1.21-UPDATE.pdf (emphasis added) (last visited on April 11, 2024).

61.    Delta Community Credit Union contracts unambiguously as follows:

"$15 **per presentment** . . . You may be charged an NSF fee each time a check or ACH is presented to us, even if it was previously submitted and rejected."

*See*  https://www.deltacommunitycu.com/home/fees.aspx  (emphasis  added) (last visited on April 11, 2024). Further, in its Account Contract, Delta unambiguously states as follows:

The Credit Union reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account. **Note that you may be charged an NSF Fee each time a check or ACH is presented to us, even if it was previously submitted and**

**rejected**.

*See* https://www.deltacommunitycu.com/home/forms/member-savings-services-disclosures-and-agreements.aspx at 2 (emphasis added) (last visited on April 11, 2024).

62.    First Financial Bank contracts unambiguously:

An item may be presented multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment).  Each presentment is considered an item and may be charged.

*See* https://www.bankatfirst.com/content/dam/bankatfirst/legal/special-handling-charges.pdf at 2 (last visited on April 11, 2024).

63.    First Northern Credit Union unambiguously contracts its NSF Fee as,

"NSF (Non-Sufficient Funds) - per each presentment and any subsequent representment(s) (additional non-credit union charges may also occur) . . .    $29.00"

*See* https://www.fncu.org/feeschedule/?scpage=1&scupdated=1&scorder=-click_count (last visited on April 11, 2024).

64.    Further, in its Account Contract, First Northern unambiguously contracts as follows:

NONSUFFICIENT FUNDS FEES - You agree that we may charge a Nonsufficient Funds (NSF) fee for returning items presented against your account that would exceed your available balance. **You further agree that we may charge a NSF fee each time an item is presented for payment even if the same item is presented for payment multiple times.** For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again. If the second and any subsequent presentments are returned unpaid, we may charge a NSF fee for each time we return the item. You understand this means you could be charged multiple NSF fees for one check that you wrote as that check could be presented and returned more than once. **Similarly, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, you understand there could be multiple submissions of the electronic debit request which could result in multiple NSF fees.** You agree that we do not determine whether and when an item will be presented for payment. Rather, we determine whether or not the available balance is sufficient to pay a presented item.

*See* https://www.fncu.org/Documents/Disclosures/Member-Agreement.pdf at 4 (emphasis added) (last visited on April 11, 2024).

65.     Glendale Federal Credit Union unambiguously contracts its NSF Fee as:

"Insufficient Funds (NSF)/ATM (per presentment)............$30"

*See* https://www.glendalefcu.org/_/kcms-doc/2001/58294/Fee-Schedule.pdf at 2 (last visited on April 11, 2024).

66.     By citing the above examples of contractual terms that contracted for the Retry NSF Fee practice, Plaintiffs do not concede that these terms exculpate Defendant from liability for any cause of action other than breach of contract.  As alleged at length herein, government regulators have found that the Retry NSF Fee practice is unfair or violative of law even when the practice is contracted for.

**D. Plaintiffs' Experience**

67.     Mr. Preston offers the following examples of Retry NSF Fees that were improperly assessed against his Navy Federal account. On October 29, 2020, Mr. Preston was charged an NSF fee in the amount of $29.00 in a transaction described as "Returned Item Fee 3110020." This fee was the result of the resubmission of a transaction that had previously triggered NSF fees on October 23, 2020 and October 27, 2020. On May 11, 2021 and May 7, 2021, Mr. Preston was charged NSF fees in transactions described as "Returned Item Fee 3110020." Both such fees were the results of resubmissions of a transaction that had triggered an NSF fee on May 5, 2021. Mr. Preston was also charged NSF fees on transactions that had previously triggered NSF fees and thus qualify as Retry NSF Fees on the following dates: August 17, 2021; October 8, 2021; October 22, 2021; November 5, 2021; November 8, 2021; and November 10, 2021.  On information and belief, discovery will reveal other instances of Retry NSF Fees improperly assessed against Mr. Preston's and Class Members' accounts throughout the Class Period. To the extent Defendant disputes any of the allegations in this paragraph, Plaintiffs request discovery of Mr. Preston's complete transaction data, account statements, and NSF letters.

68.     Plaintiff Edquid offers the following examples of Retry NSF Fees that were improperly assessed against his Navy Federal account. On July 1, 2022, Mr.

FIRST AMENDED CLASS ACTION COMPLAINT

Edquid was charged an NSF fee in the amount of $29.00 in a transaction described as "Returned Item Fee 24207175." This fee was the result of the resubmission of a $277.00 transaction that had previously triggered an NSF fee on June 29, 2022. On information and belief, discovery will reveal other instances of Retry NSF Fees improperly assessed against Plaintiff Edquid's and Class Members' accounts throughout the Class Period. To the extent Defendant disputes any of the allegations in this paragraph, Plaintiffs request discovery of Mr. Edquid's complete transaction data, account statements, and NSF letters.

69. Plaintiff Kaytlin Roque offers the following examples of Retry NSF Fees that were improperly assessed against her Navy Federal account. On December 29, 2020, Plaintiff Roque was charged an NSF fee in the amount of $29.00 on a transaction described as "Returned Item Fee 3110020." This fee was the result of the resubmission of a transaction that had previously triggered an NSF fee on December 24, 2020. Plaintiff Roque was also charged a Retry NSF Fee on March 7, 2022 on a transaction assigned the Item Number 0006200001 in the amount of $76.09. This transaction had previously triggered an NSF fee on February 24, 2022. On information and belief, NFCU intentionally tries to hide and obscure whether a fee on the monthly statement arises from a transaction which was presented previously, and discovery will reveal other instances of Retry NSF Fees improperly assessed against Plaintiff Roque's and Class Members' accounts throughout the Class Period. To the extent Defendant disputes any of the allegations in this paragraph, Plaintiffs request discovery of Plaintiff Roque's complete transaction data, account statements, and NSF letters.

70. Plaintiff Vette Gray offers the following examples of Retry NSF Fees that were improperly assessed against her Navy Federal account. On July 29, 2021, Ms. Gray was charged an NSF fee in the amount of $29.00 on a transaction described as "Returned Item Fee 2100002." This fee was the result of the resubmission of a transaction in the amount of $41.89 that had previously triggered an NSF fee on July 23, 2021. Ms. Gray was also charged a Retry NSF Fee on January 11, 2022 on a

FIRST AMENDED CLASS ACTION COMPLAINT

transaction assigned the Item Number 0008190386 in the amount of $45.00. This transaction had previously triggered an NSF fee on January 5, 2022. On information and belief, NFCU intentionally tries to hide and obscure whether a fee on the monthly statement arises from a transaction which was presented previously, and discovery will reveal other instances of Retry NSF Fees improperly assessed against Plaintiff Gray's and Class Members' accounts throughout the Class Period. To the extent Defendant disputes any of the allegations in this paragraph, Plaintiffs request discovery of Ms. Gray's complete transaction data, account statements, and NSF letters.

71.    Plaintiff Baker was improperly charged Retry NSF Fees during the Class Period. Defendant possesses the account statements, NSF letters, and transaction data necessary to identify all such fees. As discussed *infra*, Defendant deposited a purported refund of at least some of these fees into Ms. Baker's savings account with Defendant in response to her letter notifying Defendant of her claims, including her claims under the CLRA. While this purported refund does not deprive Ms. Baker of standing to pursue her claims for reasons discussed *infra*, and Ms. Baker intends to vigorously pursue her claims on behalf of the class, the purported refund demonstrates that Defendant is capable of identifying Retry NSF Fees on customer accounts, even though on information and belief it intentionally tries to hide and obscure whether a fee on the monthly statement arises from a transaction which was presented previously. Further, the purported refund demonstrates that Defendant has very likely already identified at least some Retry NSF Fees on Ms. Baker's account, and is engaged in a scheme to try to do an unlawful end-run around FRCP Rule 23 and applicable case law.

72.    Plaintiff Iliana Zuniga offers the following examples of Retry NSF Fees that were improperly assessed against her Navy Federal account. On June 30, 2022, Ms. Zuniga was charged an NSF fee in the amount of $29.00 on a $75.88 transaction assigned the Item Number 0002100002. This fee was the result of the resubmission of

the same $75.88 transaction that had previously triggered an NSF fee on June 24, 2022. On information and belief, NFCU intentionally tries to hide and obscure whether a fee on the monthly statement arises from a transaction which was presented previously, and discovery will reveal other instances of Retry NSF Fees improperly assessed against Plaintiff Zuniga's and Class Members' accounts throughout the Class Period. To the extent Defendant disputes any of the allegations in this paragraph, Plaintiffs request discovery of Ms. Zuniga's complete transaction data, account statements, and NSF letters.

**E. The Doctrines of Delayed Discovery, Equitable Tolling, and Equitable Estoppel Apply.**

73.     Plaintiffs and the Classes could not have discovered their causes of action at the time the at-issue fees were assessed against their accounts, *inter alia*, because Navy Federal adopted a policy of failing to disclose the transaction that triggered any given NSF Fee on customer account statements, thereby preventing Plaintiffs and the Classes from determining whether NSF or OD Fees were being assessed against transactions that had previously triggered one or more NSF Fees. Even if Navy Federal had presented this information, it would still be unreasonable, and next to impossible, for a layperson to be able to decipher statements and discover the practice at issue, yet alone be able to stop it.  In addition, Navy Federal's Account Documents during the Class Period misrepresented its true fee assessment practices by promising to assess only a single NSF Fee per item, further precluding Plaintiffs and the Classes from discovering their causes of action.

74.     In light of the foregoing, the applicable statute of limitations period(s) did not begin to run until June of 2024 as to Mr. Edquid, August of 2024 as to Mr. Preston, October of 2024 as to Ms. Gray, Ms. Williams, and Ms. Baker, November of 2024 as to Plaintiff Roque, and December of 2020 as to Ms. Zuniga, when the Plaintiffs discovered their causes of action with the assistance of counsel.

///

FIRST AMENDED CLASS ACTION COMPLAINT

## <u>CLASS ACTION ALLEGATIONS</u>

75.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. As all requisite elements of Rule 23 of the Federal Rules of Civil Procedure are satisfied, the court should grant class certification pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), appoint Plaintiffs as the Class Representatives and the undersigned counsel as Class Counsel. The Classes are defined as:

> All Navy Federal consumer checking accountholders who, between October 28, 2020 and the date on which Defendant's January 2021 Consumer Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee (the "Retry NSF Class").

> All Navy Federal consumer checking accountholders who are citizens of California who, between October 28, 2020 and the date on which Defendant's January 2021 Consumer Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee ("California Sub-Class").

> All Navy Federal business checking accountholders who, between October 28, 2020 and the date on which Defendant's September 2022 Business Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee (the "Business Retry NSF Class").

> All Navy Federal business checking accountholders who are citizens of California who, between October 28, 2020 and the date on which Defendant's September 2022 Business Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee ("California Business Sub-Class").

76.     Although Plaintiffs do not concede that Navy Federal's new contract terms in its January 2021 Consumer Account Agreement and September 2022 Business Account Agreement necessarily permitted multiple fees to be charged on the same

item, for purposes of this class action lawsuit Plaintiffs do end the class period when this new contract term in those two agreements became effective.

77.     Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

78.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

79.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Navy Federal has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

     a.  Whether Navy Federal improperly charged Retry NSF Fees;

     b.  Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

     c.  Whether the conduct enumerated above violates the CLRA;

     d.  Whether the conduct enumerated above violates the UCL; and

     e.  The appropriate measure of damages.

80.     The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Navy Federal's records. Navy Federal has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiffs.

FIRST AMENDED CLASS ACTION COMPLAINT

81. It is impracticable to bring members of the Classes' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

82. Plaintiffs' claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Navy Federal, as described herein.

83. Plaintiffs are more than adequate representatives of the Class in that Plaintiffs were Navy Federal checking accountholders during the Class Period and have suffered damages as a result of Navy Federal's contract violations. In addition:

    a. Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

    b. There is no conflict of interest between Plaintiffs and the unnamed members of the Class;

    c. Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

    d. Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

84. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

FIRST AMENDED CLASS ACTION COMPLAINT

85.    Navy Federal has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

86.    All conditions precedent to bringing this action have been satisfied and/or waived.

**NFCU'S PURPORTED NOTICE PROVISION IS, IN REALITY, AN ATTEMPTED END-RUN AROUND FRCP RULE 23 AND APPLICABLE CASE LAW TO ATTEMPT TO UNLAWFULLY INSULATE ITSELF FROM CLASS ACTION ACCOUNTABILITY**

87.    Before filing the original complaint in the related action *Phlaum v. Navy Federal Credit Union*, No. 5:24-CV-00765-JGB-DTB, Ms. Blanche Phlaum and Mr. Jason Jones notified Defendant on behalf of themselves and the putative Class Members of the allegations set forth in that complaint as purported to be required by Defendant's form adhesion contract so as to allow Defendant to take corrective action. Ms. Phlaum and Mr. Jones did not understand that Defendant's purported notice requirement was, in reality, an unenforceable attempted scheme by Defendant to do an end-run around FRCP Rule 23 and other class action law by impermissibly attempting to deposit money in putative class representatives' accounts and then arguing that the individual complying with the notice provision cannot be a class representative in a class action. In having notified Defendant of these allegations, Ms. Phlaum and Mr. Jones did not concede that they or any putative Class Members are contractually bound to provide such notice as a prerequisite to filing suit against Defendant or to participating in a class action against Defendant, nor that they had received actual notice of any purported requirement to first notify Defendant of a dispute regarding improper fees before being allowed to file a class action regarding the issue, as any awareness of this supposed requirement was due to the assistance of counsel.

88.    On February 22, 2024, Ms. Phlaum mailed a Notice of Claim letter (i.e., Defendant's attempted end-run around Rule 23) to Defendant, a true and correct copy of which is attached to this Complaint as Exhibit H. In that letter, Ms. Phlaum notified Defendant that Ms. Phlaum was represented by counsel; that Ms. Phlaum would act as a class representative in a putative class action against Defendant; and that Ms. Phlaum demanded the "immediate refund of all Retry NSF Fees assessed against Navy Federal member accounts between October 28, 2020 and the date the January 2021 Account Agreement became effective, plus prejudgment interest at the correct statutory rate for each state, plus attorneys' fees, plus punitive damages of treble the amount at issue, plus all applicable statutory damages." Ex. H to Complaint at 1–2.

89.    In response to Ms. Phlaum's Notice of Claim letter, counsel for Defendant wrote to Plaintiffs' counsel on March 13, 2024, stating: "As you know, I was counsel for Navy Federal in the Lambert case.  They just sent me the letter you sent on re Ms. Phlaum.  I have not yet had a chance to review anything on that, but will do so shortly and get back to you.  Can you hold off on filing anything until we can chat?" Defense counsel then spoke with Plaintiffs' counsel and discussed, *inter alia*, the theories in the case, the minimum class period which had been left open after the *Lambert* settlement before any revised contractual terms were even attempted; **and, the possibility of resolving this matter on a classwide basis without the need to immediately file the class action complaint.**

90.    In order to negotiate in good faith with Defendant to avoid the necessity of litigation, and in reliance on this conversation as well as on Defendant's March 13, 2024 email, Ms. Phlaum did not immediately file the class action Complaint. However, rather than negotiate in good faith for relief to the Class, Defendant instead used the negotiation period to unilaterally deposit money into the represented-by-counsel Ms. Phlaum's account with Defendant in a flagrant effort to try to moot her standing and evade the instant class action lawsuit. Specifically, eight days after Defendant through counsel asked for time to investigate the matter on March 21, 2024,

FIRST AMENDED CLASS ACTION COMPLAINT

Ms. Phlaum received an unsolicited deposit in the amount of $203.00, in a transaction described as "Refund – Ach Item Fees." In other words, Defendant used the supposed notification requirement, and expressed desire to discuss classwide settlement, instead as a scheme to try to avoid classwide liability.

91. More specifically, on information and belief, the purpose of Defendant's Notice provision is to avoid Rule 23 and pick off potential class representatives. This intent is clear, *inter alia*, based on Navy Federal's conduct of depositing a purported refund into Ms. Phlaum's account when she announced that she was representing a putative class and counsel was negotiating a class-wide resolution of the matter. Further, Defendant has repeatedly and consistently deposited purported refunds of Retry NSF Fees into the accounts of other putative class representatives who announce via notice letter that they intend to represent a class. At the same time, Defendant has a policy to *refuse* to refund NSF Fees unless Navy Federal believes it is at fault for the fee. In accordance with this policy, Defendant has consistently declined to refund the Retry NSF Fees of customers who request refunds on the grounds that such fees are not authorized under Defendant's contracts. This behavior is discussed further *infra* with respect to the individual named plaintiffs. Critically, when customers request such refunds without announcing that they intend to file or join a class action, Defendant adheres to its policy and refuses to refund the fee; yet when a customer files notice through counsel and threatens a class action, Defendant does issue what it argues is a purported refund, although not for classwide relief, but only to attempt to moot the standing of the individual attempting to act as a class representative. This is a consistent deviation from Defendant's policies that further proves the Notice provision, at least as applied in this case, is intended to effect a waiver of Navy Federal customers' rights to bring a class action.

92. Ms. Phlaum did not consent to the March 21, 2024 deposit into her account. This deposit was not previously discussed with Ms. Phlaum or Plaintiffs' counsel. Ms. Phlaum does not regard this deposit as a refund of the Retry NSF Fees

FIRST AMENDED CLASS ACTION COMPLAINT

alleged herein. The deposit did not afford Ms. Phlaum the relief that she sought in her lawsuit including because, *inter alia*, the deposit does not, as demanded in the February 22, 2024 letter, provide a "refund of all Retry NSF Fees assessed against Navy Federal member accounts between October 28, 2020 and the date the January 2021 Account Agreement became effective;" does not, as demanded in the February 22, 2024, letter, include "prejudgment interest at the correct statutory rate"; does not, as demanded in the February 22, 2024, letter, include "attorneys' fees"; does not, as demanded in the February 22, 2024, letter, include "punitive damages of treble the amount at issue"; does not, as demanded in the February 22, 2024, letter, include "all applicable statutory damages"; and, does not specify which of the numerous fees on their account are being refunded. Further, *inter alia*, to the extent the deposit is a refund for "Ach Item Fees," it does not compensate Ms. Phlaum for Retry NSF Fees she incurred on transactions that are not ACH items, such as checks. Because, *inter alia*, the deposit was not negotiated or discussed with Ms. Phlaum, and also because the matter was not communicated to the represented Ms. Phlaum's attorneys, and on information and belief the deposit was made by Defendant on the advice of its attorneys, it cannot constitute a contractual offer that relates in any way to her claims in this lawsuit. Further, Ms. Phlaum was not bound by the supposed notification provision for the additional reason that to the extent it is at all enforceable and not a scheme to do an end-run around Rule 23, it is a contractual term which never became effective with regard to her. In addition, because the deposit does not include an admission by Defendant that the fees assessed against Ms. Phlaum's account were improper, there is the risk that Defendant may simply withdraw the deposited funds from the account at any time, thus rendering its offer, if any, illusory.

93. On March 22, 2024, *after* Defendant already had surreptitiously and without authorization deposited funds in Ms. Phlaum's account without warning, in further attempted perpetuation of its end-run scheme around Rule 23, Defendant sent Ms. Phlaum the letter that is attached to this Complaint as Exhibit I. In that letter,

FIRST AMENDED CLASS ACTION COMPLAINT

Defendant stated that because Plaintiffs' counsel indicated they "may have other clients with concerns about Navy's NSF fee practices," Plaintiffs' counsel should "direct any further client inquiries (for Ms. Phlaum or otherwise) to [Defendant's counsel] under the 'Notice of Claim' provision in the contract." Ex. I to Complaint at 1. This request indicates that Defendant intends again to engage in its scheme to try to do an end-run around Rule 23, as well as the law and facts, including class action jurisprudence, to send unsolicited, non-negotiated sums of money that are purportedly refunds to any class member who attempts to come forward as a class representative and hold Defendant accountable on a classwide, rather than individual, basis. This is a flagrant and unlawful attempt by Defendant to eliminate the standing of any potential class representative and evade a class action regarding the Retry NSF Fee practice as alleged herein. On information and belief, Defendant will attempt to continue to try to "pick off" or "buy off" any putative class representative who submits a Notice of Claim using the procedure described in the Account Agreement. In other words, it is now apparent that Defendant's supposed "notice" requirement is actually a thinly veiled scheme to attempt to improperly immunize itself against class actions.

94. By inserting this purported pre-lawsuit notice requirement, Navy Federal has *de facto* caused the notice itself, to the extent it can be required at all, to be tantamount to the filing of a lawsuit, *inter alia*, because the supposed notice requirement is in reality intended by NFCU for the purpose of picking off class representatives. To the extent this provision is enforceable at all, which Plaintiffs dispute, it needs to be treated as part and parcel of an actual lawsuit filing. Nevertheless, in spite of Defendant's clear intent to attempt to pick off putative class representatives who submit Notice of Claim letters, Ms. Phlaum and Mr. Jones also mailed a Notice of Claim letter on behalf of Mr. Jones to Defendant on April 10, 2024. Exhibit J to Complaint.

95. Consistent with its scheme of this purported pre-lawsuit notice requirement in reality being an attempted end-run by Defendant around Rule 23 to

FIRST AMENDED CLASS ACTION COMPLAINT

avoid class action accountability and pick off class representatives, in response to the Notice of Claim letter on behalf of Mr. Jones, as described in a May 2, 2024 letter to Plaintiffs' counsel, Defendant deposited funds in Mr. Jones's account in purported satisfaction of his claims. Exhibit K to Complaint at 4. This purported refund did not provide Mr. Jones the relief he seeks in the lawsuit for the reasons discussed above regarding Ms. Phlaum. Specifically, *inter alia*, Mr. Jones did not consent to the deposit into his account. This deposit was not previously discussed with Mr. Jones or his counsel. Mr. Jones does not regard this deposit as a refund of the Retry NSF Fees alleged herein. The deposit did not afford Mr. Jones the relief that he sought including because, *inter alia*, the deposit does not, as demanded provide a "refund of all Retry NSF Fees assessed against Navy Federal member accounts between October 28, 2020 and the date the January 2021 Account Agreement became effective;" does not, as demanded include "prejudgment interest at the correct statutory rate"; does not, as demanded, include "attorneys' fees"; does not, as demanded, include "punitive damages of treble the amount at issue"; does not, as demanded, include "all applicable statutory damages". Further, *inter alia*, to the extent the deposit is a refund for "Ach Item Fees," it does not compensate Mr. Jones for Retry NSF Fees he incurred on transactions that are not ACH items, including such as checks. Because, *inter alia*, the deposit was not negotiated or discussed with Mr. Jones, and also because the matter was not communicated to the represented Mr. Jones's attorneys, and on information and belief the deposit was made by Defendant on the advice of its attorneys, it cannot constitute a contractual offer that relates in any way to his claims in that lawsuit. Further, Mr. Jones was not bound by the supposed notification provision for the additional reason that to the extent it is at all enforceable and not a scheme to do an end-run around Rule 23, it is a contractual term which never became effective with regard to him, and to the extent h was aware of it at all was only through counsel. In addition, because the deposit does not include an admission by Defendant that the fees assessed against Mr. Jones's account were improper, there is the risk that Defendant

FIRST AMENDED CLASS ACTION COMPLAINT

may simply withdraw the deposited funds from the account at any time, thus rendering its offer, if any, illusory.

96. In addition, this second refund attempt by Defendant, first with Ms. Phlaum and then with Mr. Jones, further demonstrates Defendant's intent to attempt to "pick off" any potential class representative who informs Defendant of their claims in this lawsuit, in an attempt to unlawfully dodge class action accountability. Further, as described below, Defendant again engaged in this scheme when it issued yet another purported refund to Plaintiff Baker after she submitted the supposed required notice and CLRA letter attached to this Complaint as Exhibit P, as further described *infra*.

97. In addition to the reasons set forth above, Mr. Preston also was not required to comply with the Notice of Claim provision because, *inter alia*, Mr. Preston did not receive notice that his Account Agreement was being supposedly superseded by the January 2021 Account Agreement, which is the first version of the agreement that contains the Notice of Claim provision, nor did he assent to any revised Account Agreement containing the Notice of Claim provision, and to the extent he has any knowledge of such it is through counsel. Mr. Preston was also not required to comply with the Notice of Claim provision for the reasons discussed herein. Even if Mr. Preston was required to comply with this provision, he did so. Mr. Preston complained over the phone to Navy Federal regarding Retry NSF Fees on his account, including the Retry NSF Fees assessed in October 2020 and May 2021, and requested refunds. Navy Federal did not refund these fees in response to Mr. Preston's complaints. To the extent Defendant disputes the allegations in this paragraph, Plaintiffs require discovery of Navy Federal's contentions purporting to dispute that Mr. Preston complied with the Notice of Claim provision, including by means of a deposition of Navy Federal's appropriate Rule 30(b)(6) witness and custodian of records to determine how its recordings of customer calls are archived, its retention policy, and other topics relevant to Mr. Preston's complaints.

FIRST AMENDED CLASS ACTION COMPLAINT

98.    Proposed class representative Mr. Edquid did not receive a purported refund into his account by NFCU despite so requesting. This is because, consistent with its supposed notice provision actually being an attempted end-run around FRCP Rule 23 and applicable case law, NFCU was unaware Mr. Edquid might be going forward as a class representative when he sought a refund of the fees at issue in this lawsuit.  This is further evidence of the true nature of NFCU's purported notice provision.  Mr. Edquid was not required to comply with the Notice of Claim provision because in addition to the reasons set forth above, *inter alia*, because Mr. Edquid did not receive notice that his Account Agreement was being supposedly superseded by the January 2021 Account Agreement, which is the first version of the agreement that contains the Notice of Claim provision, nor did he assent to any revised Account Agreement containing the Notice of Claim provision, and to the extent he has any knowledge of such it is through counsel. Mr. Edquid was also not required to comply with the Notice of Claim provision for the reasons discussed herein. However, although Mr. Edquid was not required to comply with the scheme notice provision, he nonetheless did so. Specifically, on September 26, 2024, Mr. Edquid complained to a Navy Federal customer service representative via Defendant's website regarding the Retry NSF Fees assessed against his account between 2020 and the present day, including the July 1, 2022 fee described in this Complaint, and requested that Defendant refund these fees. Defendant did not request any additional time to investigate this request, but simply refused to refund any of Mr. Edquid's fees as requested.  Ex. N to Complaint:

---

FIRST AMENDED CLASS ACTION COMPLAINT

99.    Proposed class representative Plaintiff Roque did not receive a purported refund into her account by NFCU despite so requesting. This is because, consistent with its supposed notice provision actually being an attempted end-run around FRCP Rule 23 and applicable case law, NFCU was unaware Plaintiff Roque might be going forward as a class representative when she sought a refund of the fees at issue in this lawsuit.  This is further evidence of the true nature of NFCU's purported notice provision as a scheme to avoid class actions.  Plaintiff Roque was not required to comply with the Notice of Claim provision because in addition to the reasons set forth above, *inter alia*, Plaintiff Roque did not receive notice that her Account Agreement was being supposedly superseded by the January 2021 Account Agreement, which is the first version of the agreement that contains the Notice of Claim provision, nor did she assent to any revised Account Agreement containing the Notice of Claim provision, and to the extent she has any knowledge of such it is through counsel. Plaintiff Roque was also not required to comply with the Notice of Claim provision

FIRST AMENDED CLASS ACTION COMPLAINT

for the reasons discussed herein. However, although Plaintiff Roque was not required to comply with the scheme notice provision, she did so. On December 13, 2024, Plaintiff Roque complained to a Navy Federal customer service representative via Defendant's website regarding the Retry NSF Fees assessed against her account between October 28, 2020 and the present day, as follows:

> Hello. I am writing to request a refund of all Returned Item Fees and Overdraft Fees on my account resulting from resubmitted transactions that had previously triggered a fee between October 28, 2020 and today. This happened on at least December 29, 2020 ("Returned Item Fee 3110020"), February 24, 2021 ("Returned Item Fee 21117010"), and March 7, 2022 (item number 0006200001). I believe that according to the contract Navy Federal was wrong to charge me these fees.

Ex. O to Complaint at 1. Defendant did not request any additional time to investigate this request, but simply refused to refund any of the fees as requested, as follows:

> Navy Federal processes checks and Automated Clearing House (ACH) debits as they are presented for payment. A Returned Item Fee occurs the business day after an ACH item is returned unpaid due to insufficient funds. At this time, we are unable to waive any additional fees on your account, unless it is a Navy Federal error.

100. Ms. Baker was not required to comply with the Notice of Claim provision because in addition to the reasons set forth above, *inter alia*, Ms. Baker did not receive notice that her Account Agreement was being supposedly superseded by the January 2021 Account Agreement, which is the first version of the agreement that contains the Notice of Claim provision, nor did she assent to any revised Account Agreement containing the Notice of Claim provision, and to the extent she has any knowledge of such it is through counsel. Ms. Baker was also not required to comply with the Notice

of Claim provision for the reasons discussed herein. However, although Ms. Baker was not required to comply with the scheme provision, she did so. On December 10, 2024, Ms. Baker sent the notice letter attached to this Complaint as Exhibit P to counsel for Defendant, and mailed the letter to Defendant on December 11, 2024 via certified mail. This letter informed Defendant of Ms. Baker's claims on behalf of the class and that its assessment of Retry NSF Fees as alleged violated the CLRA.

101. On December 19, 2024, Defendant, consistent with its use of the supposed notice provision as an attempted end-run scheme around Rule 23 and applicable case law, surreptitiously and without consent deposited $435 into Ms. Baker's savings account in a transaction described as "Refund ACH fees." Ms. Baker does not regard this purported refund as satisfaction of her claims in this case. To the extent this purported refund can be construed as an offer by Defendant to resolve Ms. Baker's claims, Ms. Baker expressly rejects the offer and requests that Defendant withdraw the $435 deposit from her account. Defendant's intent in issuing this refund was in reality an unlawful and deceptive attempt to prevent Ms. Baker from serving as a class representative in this action. The purported refund was never discussed with Ms. Baker or her counsel. Defendant's purported refund to Ms. Baker also does not satisfy her claims in this case because, *inter alia*, the deposit does not, as demanded in the letter, provide a "refund of all Retry NSF Fees assessed against all Navy Federal member accounts between October 28, 2020 and the date the January 2021 Account Agreement became effective, plus for all members on whom such fees were imposed prejudgment interest at the correct statutory rate for each state, plus attorneys' fees, plus punitive damages of treble the amount at issue, plus all applicable statutory damages." Ex. P to Complaint at 1. In addition, because the deposit does not include an admission by Defendant that the fees assessed against Ms. Baker's account were improper, there is the risk that Defendant may simply withdraw the deposited funds from the account at any time, thus rendering its offer, if any, illusory.

102.   Ms. Baker did not intend for Defendant to deposit money into her savings account in response to her December 10, 2024 letter. Rather, Ms. Baker's intention was to secure relief for the class, not just for herself. Indeed, Ms. Baker did not believe that Defendant could, as a technical matter, deposit money into her savings account in response to her claims. That is because her checking account, on which she was assessed the at-issue fees, was closed at the time the letter was mailed. Counsel for Defendant had previously, on October 27, 2024, stated in an email to Plaintiffs' counsel that "Mr. Preston's checking accounts were all closed, so there was **no ability to credit any account for him**." Ex. Q to Complaint at 1 (emphasis added).

103.   Further, because Ms. Baker's December 10, 2024 notice letter was also a CLRA demand letter, Defendant "was under an affirmative obligation to meet the conditions set forth in section 1782, subdivision (c) in order to avert a class action" and Defendant took no steps as required by the CLRA to "identify consumers similarly situated to plaintiff, or notify such consumers that it would provide them relief upon their request" or provide the "requested relief to any similarly situated consumers." *Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582, 592, 676 P.2d 1060, 1064–65 (1984). As such, Ms. Baker "may properly bring the action on behalf of herself and as a representative of the class." *Id.*

104.   Proposed class representative Ms. Zuniga also did not receive a purported refund into her account by NFCU despite so requesting. This is because, consistent with its supposed notice provision actually being an attempted end-run around FRCP Rule 23 and applicable case law, NFCU was unaware Ms. Zuniga might be going forward as a class representative when she sought a refund of the fees at issue in this lawsuit.  This is further evidence of the scheme nature of NFCU's purported notice provision. Ms. Zuniga was not required to comply with the Notice of Claim provision because in addition to the reasons set forth above, *inter alia*, Ms. Zuniga did not receive notice that her Account Agreement was being supposedly superseded by the January 2021 Account Agreement, which is the first version of the agreement that

contains the Notice of Claim provision, nor did she assent to any revised Account Agreement containing the Notice of Claim provision, and to the extent she has any knowledge of such it is through counsel. Ms. Zuniga was also not required to comply with the Notice of Claim provision for the reasons discussed herein. Even if Ms. Zuniga was required to comply with this provision, she did so. On or around June 30, 2022, Ms. Zuniga called Defendant to complain about the June 30, 2022 NSF Fee identified in this Complaint as a Retry NSF Fee and requested a refund, but Defendant did not refund the fee. To the extent Defendant disputes the allegations in this paragraph, Plaintiffs require discovery of Navy Federal's contentions purporting to dispute that Ms. Zuniga complied with the Notice of Claim provision, including by means of a deposition of Navy Federal's appropriate Rule 30(b)(6) witness and custodian of records to determine how its recordings of customer calls are archived, its retention policy, and other topics relevant to Ms. Zuniga's complaints.

105. Proposed class representative Ms. Gray also did not receive a purported refund into her account by NFCU despite hours of attempts by her to request one. This too is consistent with its supposed notice provision actually being an attempted end-run around FRCP Rule 23 and applicable case law, NFCU was unaware Ms. Gray might be going forward as a class representative when she spent hours of effort to try to request a refund of the fees at issue in this lawsuit. In addition to the reasons set forth above, Ms. Gray was not required to comply with the Notice of Claim provision because, *inter alia*, Ms. Gray did not assent to any revised Account Agreement containing the Notice of Claim provision, and to the extent she has any knowledge of such it is through counsel. Ms. Gray was also not required to comply with the Notice of Claim provision for the reasons discussed herein. Further, Ms. Gray attempted to comply with the Notice provision by sending a message through Navy Federal's web-based customer service portal, but was not given access to her account despite several hours of attempts and multiple phone calls to Navy Federal requesting access.

FIRST AMENDED CLASS ACTION COMPLAINT

106.   Plaintiffs also complied with the Notice of Claim provision because they were already putative class members and/or affected members at the time Ms. Phlaum mailed her Notice letter, and also at the time Mr. Jones mailed his Notice letter. To the extent any requirement for a pre-lawsuit notice ever existed despite it being in reality an attempted scheme by NFCU to immunize itself against class action accountability by doing an end-run around FRCP Rule 23 and class action jurisprudence, which requirement Plaintiffs dispute, this was satisfied by Ms. Phlaum's letter, which Navy Federal concedes having received, and which specifically stated that it was sent on behalf of "all other persons on whom similar misconduct was imposed." Ex. H to Complaint.

107.   Further, to the extent any obligation for a pre-lawsuit notice ever existed, which Plaintiffs dispute, this also was satisfied by Mr. Jones's letter, which Navy Federal concedes having received, and which specifically stated that it was sent on behalf of "all other persons on whom similar misconduct was imposed." Ex. J to Complaint.  Therefore, there is no dispute that Navy Federal was aware of the issue in contention, and notice of these requests to refund such fees to and Plaintiffs satisfied the Notice requirement in this additional separate manner.

108.   To the extent that Plaintiffs are currently aware of Defendant's notice requirement, this was not due to having received notice of the January 2021 Account Agreement terms, but rather due to having retained counsel, who were aware of the Notice provision based on their own, independent research.

109.   Further, even if Plaintiffs had received notice that their account agreements were being superseded by the January 2021 Account Agreement, the Notice of Claim provision on its face is not retroactive and therefore does not apply to claims that accrued before thirty days following any notice of the January 2021 Account Agreement. *See* Ex. A to Complaint at 6 ("The terms of this account may change upon 30 days' notice."). The Notice provision states:

---

40

FIRST AMENDED CLASS ACTION COMPLAINT

> Neither Member nor Navy Federal may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to **this Agreement** or that alleges that the other party has breached any provision of, or any duty owed by reason of, **this Agreement**, until such party has notified the other party of such alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action.

Ex. C to Complaint at 8 (emphasis added). The phrase "this Agreement" means the January 2021 Account Agreement, not the October 2020 Account Agreement on which this class action is based. Notice is required pursuant to this provision only if a party alleges that the January 2021 Account Agreement was breached.

110. Compliance with the Notice of Claim requirement is also excused as to all Plaintiffs because Defendant intends to "pick off" any putative class representative who submits such a claim on behalf of a class, thereby effectively precluding the possibility of a class action regarding Retry NSF Fees in contravention of Rule 23. This tactic has been repeatedly disapproved by the Ninth Circuit and the Supreme Court of California:

> Applying these principles to our case, we conclude that Terrible's unaccepted offer *1091 of judgment did not moot Pitts's case because his claim is transitory in nature and may otherwise evade review. Accordingly, if the district court were to certify a class, certification would relate back to the filing of the complaint. We recognize that the canonical relation-back case—such as Gerstein or McLaughlin—involves an "inherently transitory" claim and, correspondingly, "a constantly changing putative class." Wade v. Kirkland, 118 F.3d 667, 670 (9th Cir.1997). But we see no reason to restrict application of the relation-back doctrine only to cases involving inherently transitory claims. **Where, as here, a defendant seeks to "buy off" the small individual claims of the named Plaintiffs, the analogous claims of the class—though not inherently transitory—become no less transitory than inherently transitory claims. Thus, although Pitts's claims "are not 'inherently transitory' as a result of being time sensitive, they are 'acutely susceptible to mootness' in light of [the defendant's] tactic of 'picking off' lead Plaintiffs** with a Rule 68 offer to avoid a class action." Weiss v. Regal Collections, 385 F.3d 337, 347

---

41

FIRST AMENDED CLASS ACTION COMPLAINT

(3d Cir.2004) (internal citation omitted). The end result is the same: a claim transitory by its very nature and one transitory by virtue of the defendant's litigation strategy share the reality that both claims would evade review.

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090–91 (9th Cir. 2011) (emphasis added).

> Because *Gomez's* holding that *Pitts* is not clearly irreconcilable with *Genesis Healthcare* is not itself clearly irreconcilable with intervening Supreme Court authority, we are bound by *Gomez. See Miller v. Gammie,* 335 F.3d 889, 892–93 (9th Cir.2003) (en banc) (holding "a three-judge panel may [not] reexamine normally **\*1144** controlling circuit precedent in the face of an intervening United States Supreme Court decision" unless "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority"). Accordingly, ***Pitts* remains the law of this circuit. Under *Pitts,* even assuming Allstate could fully satisfy Pacleb's individual claims, Pacleb still would be able to seek class certification.**

*Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1143–44 (9th Cir. 2016) (emphasis added).

> In the present case, American has waived its acceleration clause only as to La Salas and Iford. If other borrowers bring a class action, American may again waive as to those representative borrowers, and again move to dismiss the action. Such a procedure could be followed ad infinitum for each successive group of representative Plaintiffs. If defendant is permitted to succeed with such revolving door tactics, only members of the class who can afford to initiate or join litigation will obtain redress; relief for even a portion of the class would compel innumerable appearances by individual Plaintiffs. Yet the function of the class action is to avoid the imposition of such burdens upon the class and upon the court. (*See Hansberry v. Lee* (1940) 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22.) If we sanction American's tactic defendants can always defeat a class action by the kind of special treatment accorded Plaintiffs here and thus deprive other members of the class of the benefits of the litigation and any notice of opportunity to enter into it.

FIRST AMENDED CLASS ACTION COMPLAINT

*La Sala v. Am. Sav. & Loan Assn.*, 5 Cal. 3d 864, 873, 489 P.2d 1113, 1118 (1971)

111.   This purported notice requirement by Navy Federal is an obvious attempt at an end-run around Rule 23 and the case law prohibiting pick-off attempts of class representatives. To the extent the Notice of Claim provision is enforceable at all, the customer's compliance with this provision must be treated as the filing of a complaint so as to avoid Defendant's attempt to vitiate the purpose of Rule 23. Any customer who complies with the provision with an intent to file a lawsuit has, by virtue of having given notice, filed a complaint for purposes of Article III standing.

112.   Compliance with the Notice of Claim provision is also excused because compliance would have been futile. Defendant has consistently demonstrated that it will not provide the relief requested by Plaintiffs in response to any form of notice of their claims.

113.   Even if compliance with the Notice of Claim provision were not excused, Defendant's tactic of issuing refunds to plaintiffs who comply with it is without legal effect because this lawsuit seeks relief under the Consumer Legal Remedies Act, which permits class actions to proceed even if the defendant provides an individual claimant with relief before the lawsuit is filed:

> As these letters, taken together, put Gibraltar on notice that its alleged violations of section 1770 affected a class of consumers, Gibraltar was under an affirmative obligation to meet the conditions set forth in section 1782, subdivision (c) in order to avert a class action. There is no evidence to indicate that Gibraltar made an effort to meet any of these conditions. Gibraltar did not seek to identify consumers similarly situated to plaintiff, or notify such consumers that it would provide them relief upon their request. Nor did Gibraltar demonstrate that it had provided requested relief to any similarly situated consumers or that it would cease from engaging in the challenged conduct within a reasonable time. Gibraltar made no mention of stopping any of its allegedly false advertising other than withdrawing its promotional brochures. Nor did Gibraltar indicate that it would require its employees to stop making the allegedly misleading oral representations. Additionally, assuming plaintiff's husband is a member of the purported class of IRA depositors fraudulently induced to open

FIRST AMENDED CLASS ACTION COMPLAINT

IRAs with Gibraltar, Gibraltar's reimbursement to him of the $15 which it acknowledged deducting from his 1979 and 1980 ***43 accounts did not include any compensation for the requested interest thereon.

**1065 As Gibraltar did not meet the conditions of section 1782, subdivision (c) in response to notification of its alleged class violations of section 1770, a class action for damages pursuant to section 1781, subdivision (a) may lie. Moreover, as discussed below, plaintiff may properly bring the action on behalf of herself and as a representative of the class.

*Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582, 592, 676 P.2d 1060, 1064–65 (1984).

114.   On September 27, 2024, Plaintiffs Edquid and Preston sent the CLRA demand and notice letter that is attached to this Complaint as Exhibit R to counsel for Defendant via email. This letter was also sent to Defendant via certified mail on September 27, 2024.

115.   On or around the date of the filing of this Complaint, Plaintiffs Roque, Gray, and Zuniga will have mailed a letter to Defendant notifying it of its violations of the CLRA.

## FIRST CLAIM FOR RELIEF

### Breach Of Contract, Including the Implied Covenant Of Good Faith And Fair Dealing

### (On Behalf of Plaintiffs and the Classes)

116.   Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

117.   Plaintiffs, and all members of the proposed Class, contracted with Navy Federal for checking account services, including debit card services.

118.   Defendant breached its contract and promises made to Plaintiffs and all members of the proposed class when as described herein, Defendant charged multiple NSF Fees or NSF Fees followed by an OD Fee on a single item.

119. Further, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

120. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, interference with or failure to cooperate in the other party's performance, and abuse of unilateral contractual discretion.

121. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

122. Navy Federal has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, Navy Federal abused its contractual discretion to define the contractual terms "each refused check" and "each returned debit item" in a manner contrary to any reasonable, common sense understanding of those terms. Under Navy Federal's definitions, "each refused check" is equivalent to "each refusal of the check" and "each returned debit item" is equivalent to "each return of the debit item."

123. Plaintiffs and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

FIRST AMENDED CLASS ACTION COMPLAINT

124. Plaintiffs and all members of the proposed Class have sustained damages as a result of Navy Federal's breach of contract and breach of the implied covenant of good faith and fair dealing and are entitled to monetary relief and injunctive relief to avoid further damage which they and the members of the Class are threatened or at risk of.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Classes)

125. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

126. To the extent required, this cause of action is pled in the alternative.

127. As a result of the misconduct alleged above, Navy Federal unjustly received and retained money in the form of Retry NSF Fees assessed against Plaintiffs and the Classes. In so doing, Navy Federal acted with conscious disregard for the rights of Plaintiffs and members of the Classes.

128. As a result of Navy Federal's wrongful conduct as alleged herein, Navy Federal has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Classes.

129. Navy Federal's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

130. Under the common law doctrine of unjust enrichment, it is inequitable for Navy Federal to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of Retry NSF Fees on Plaintiffs and members of the Classes in an unfair, unconscionable, and oppressive manner. Navy Federal's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

131. The financial benefits derived by Navy Federal rightfully belong to Plaintiffs and members of the Classes. Navy Federal should be compelled to disgorge

FIRST AMENDED CLASS ACTION COMPLAINT

in a common fund for the benefit of Plaintiffs and members of the Classes all wrongful or inequitable proceeds received by it. A constructive trust should be imposed upon all wrongful or inequitable sums received by Navy Federal traceable to Plaintiffs and the members of the Classes.

132.   Plaintiffs and the Classes lack an adequate remedy at law to recover the amounts sought in restitution by this claim to the extent their legal claims are deemed barred by any affirmative defense that would not apply to this unjust enrichment claim.

133.   Plaintiffs, on behalf of themselves and the Classes, seek restitution from Defendant of the Retry NSF Fees alleged herein.

### THIRD CLAIM FOR RELIEF

**Money Had and Received**

**(On Behalf of Plaintiffs and the Classes)**

134.   The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

135.   Defendant has obtained money from Plaintiffs and the Class Members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

136.   As a result, Defendant has in its possession money which, in equity, belongs to Plaintiffs and the Class Members, and thus, this money should be refunded to Plaintiffs and the Class Members. Therefore, Plaintiffs and the Class Members seek relief as set forth in the Prayer below.

### FOURTH CLAIM FOR RELIEF

**Violation of Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.**

**(On Behalf of Plaintiffs, the California Sub-Class, and the California Business Sub-Class)**

137.   The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

FIRST AMENDED CLASS ACTION COMPLAINT

138. Navy Federal's conduct described herein violates California's Unfair Competition Law (the "UCL"), codified as Business and Professions Code section 17200, *et seq*. The UCL prohibits and provides civil remedies for unlawful and unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

139. Defendant's conduct violates the UCL's "unlawful" prong. Government regulators have determined that the Retry NSF Fee practice is violative of substantive law. For instance, the CFPB has found that the assessment of Retry NSF Fees constitutes an unfair or deceptive act or practice in violation of Sections 1031 and 1036 of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a) and (c)(1), and 5536(a)(1)(B).

140. Defendant's assessment of Retry NSF Fees against Plaintiffs and the Class Members is "deceptive" for purposes of 12 U.S.C. §§ 5531(a) and (c)(1); 15 U.S.C. § 45(a)(1); and 12 U.S.C. § 5536(a)(1)(B) because Defendant's Account Documents indicate that only a single NSF Fee may be assessed per check or item, when in reality Defendant's practice was to assess Retry NSF Fees.

141. Defendant's assessment of Retry NSF Fees against Plaintiffs and the Class Members is "unfair" for purposes of 12 U.S.C. §§ 5531(a) and (c)(1); 15 U.S.C. § 45(a)(1); and 12 U.S.C. § 5536(a)(1)(B) *inter alia* for the reasons alleged at length herein.

142. Defendant's assessment of Retry NSF Fees against Plaintiffs and the Class Members also violates the "unlawful" prong of the UCL because such conduct violates the Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq*., as

FIRST AMENDED CLASS ACTION COMPLAINT

further alleged herein.

143.   Defendant's assessment of Retry NSF Fees against Plaintiffs and the Class Members also violates the "unlawful" prong of the UCL because such conduct breached Defendant's contracts with Plaintiffs and Class Members as further alleged herein.

144.   Defendant's assessment of Retry NSF Fees against Plaintiffs and the Class Members also violates the "unlawful" prong of the UCL because, *inter alia*, it violated the implied covenant of good faith and fair dealing by abusing contractual discretion to define key contractual provisions as permitting the assessment of Retry NSF Fees.

145.   Further, Defendant's conduct described herein also separately violates the UCL "fraudulent" prong. Defendant falsely represented, or created the tendency or likelihood to believe the deception, that only a single NSF fee would be assessed on each check or item, when its practice was to assess multiple fees on each check or item when re-presented by the merchant. Plaintiffs reasonably expected to be charged only those fees which Defendant expressly contracted to assess, not Retry NSF Fees, or an NSF fee followed by an overdraft fee on the same item.

146.   As further alleged herein, Navy Federal's conduct also violates the UCL's "unfair" prong insofar as Navy Federal charges Retry NSF Fees in breach of its contracts with its customers and abuses its contractual discretion to define key contractual provisions as permitting the assessment of Retry NSF Fees.

147.   Navy Federal's conduct violates the "unfair" prong for, *inter alia*, the following reasons: Plaintiffs and the Class Members could not reasonably avoid the Retry NSF Fees assessed against their accounts because they were unaware of when or whether merchants would resubmit their transactions for payment or how many times merchants would resubmit their transactions for payment. As stated by the Consumer Financial Protection Bureau, "The assessment of multiple NSF fees for the same transaction caused substantial monetary harm to consumers, totaling millions of

dollars. **These injuries were not reasonably avoidable by consumers, regardless of account opening disclosures. And the injuries were not outweighed by countervailing benefits to consumers or competition**." And as stated by the Office of the Comptroller of Currency, "Even when customer disclosures explain that a single check or ACH transaction may result in more than one fee, a bank's practice of assessing fees on each representment may also be unfair, for purposes of Section 5, if consumers cannot reasonably avoid the harm and the other factors for establishing unfairness under Section 5 are met. Consumers typically have no control over when a returned ACH transaction or check will be presented again and lack knowledge of whether an intervening deposit will be sufficient to cover the transaction and related fees." Plaintiffs and Class Members could not request that Defendant stop these payments without incurring Defendant's "stop payment" fees, nor did Plaintiffs and the Class Members have any guarantee that a stop payment request would become effective in time to prevent subsequent resubmissions of the same transaction and the resultant Retry NSF Fees. Defendant's assessment of Retry NSF Fees exacerbated the difficulty of repaying any properly assessed fees or negative balances on Plaintiffs' and Class Members' accounts, thereby increasing the likelihood that they would incur additional OD or NSF Fees, including additional Retry NSF Fees. Further, Plaintiffs and the Class Members could not reasonably avoid Retry NSF Fees because they lacked knowledge whether an intervening deposit would become available in time to cover subsequent attempts by merchants to resubmit a prior transaction, given that such resubmission attempts might post to the account before the deposit became available.

148.   Navy Federal's conduct was not motivated by any legitimate business or economic need or rationale. The harm and adverse impact of Navy Federal's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives. The harm to Plaintiffs and Class Members arising from Navy Federal's unfair practices relating to the imposition of the improper fees outweighs the utility, if any, of those practices. On information and

belief, Defendant incurs only a *de minimis* cost when it processes and rejects resubmitted transactions. Further, Retry NSF Fees cannot be justified as punitive measures to encourage members of Defendant to maintain positive account balances because such members are unaware of when or whether merchants' resubmissions of prior transactions will occur, and Retry NSF Fees exacerbate the difficulty of bringing the account balance positive without altering account holder behavior.

149.   Navy Federal's unfair business practices as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiffs and Class Members, and the general public.  Navy Federal's conduct was substantially injurious to consumers in that they have been forced to pay improper, abusive, and/or unconscionable Retry NSF Fees. Navy Federal's conduct in assessing Retry NSF Fees in breach of its contracts with its customers and abusing its contractual discretion to define key contractual provisions as permitting the assessment of Retry NSF Fees violated the public policy against such fees as articulated by the CFPB, OCC, and FDIC in enforcement actions and supervisory guidance publications, and by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

## FIFTH CLAIM FOR RELIEF

**Violation of The Consumer Legal Remedies Act,
California Civil Code §§ 1750, *et seq.***

**(On behalf of Plaintiffs and the California Sub-Class)**

150.   This cause of action is brought pursuant to the Consumer Legal Remedies Act ("CLRA").

151.   Plaintiffs and each member of the California Sub-Class is a "consumer" within the meaning of California Civil Code § 1761(d).

152.   Navy Federal violated the CLRA when it represented that a single NSF Fee would be assessed per check or item, when in fact its practice was to assess Retry NSF Fees. This conduct violated California Civil Code §§ 1770(a)(5), (9), and (14).

FIRST AMENDED CLASS ACTION COMPLAINT

153.   Plaintiffs request this Court enjoin Navy Federal from continuing to violate the CLRA as alleged herein in the future. Otherwise, Plaintiffs, the Class and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

154.   As a result of Navy Federal's violations of the CLRA, Plaintiffs and the California Sub-Class are further entitled to actual damages, restitution, punitive damages, and attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

### Conversion

### (On Behalf of Plaintiffs and the Classes)

155.   The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

156.   Navy Federal had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

157.   Navy Federal has wrongfully collected Retry NSF Fees from Plaintiffs and the members of the Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

158.   Navy Federal has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the Classes, without legal justification.

159.   Navy Federal continues to retain these funds unlawfully without the consent of Plaintiffs or members of the Classes.

160.   Navy Federal intends to permanently deprive Plaintiffs and the members of the Classes of these funds.

161.   These funds are properly owned by Plaintiffs and the members of the Classes, not Navy Federal, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the Classes.

FIRST AMENDED CLASS ACTION COMPLAINT

162.   Plaintiffs and the members of the Classes are entitled to the immediate possession of these funds.

163.   Navy Federal has wrongfully converted these specific and readily identifiable funds.

164.   Navy Federal's wrongful conduct is continuing.

165.   As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the Classes have suffered and continue to suffer damages.

166.   By reason of the foregoing, Plaintiffs and the members of the Classes are entitled to recover from Navy Federal all damages and costs permitted by law, including all amounts that Navy Federal has wrongfully converted.

**PRAYER**

WHEREFORE, Plaintiffs and the Classes pray for judgment as follows:

1.   For an order certifying this action as a class action;

2.   For compensatory damages on all applicable claims and in an amount to be proven at trial;

3.   For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4.   For statutory damages;

5.   For punitive damages;

6.   For an order enjoining the wrongful conduct alleged herein;

7.   For costs;

8.   For pre-judgment and post-judgment interest as provided by law;

9.   For attorneys' fees under the common fund doctrine, and all other applicable law and sources; and,

10.   For such other relief as the Court deems just and proper.

///

FIRST AMENDED CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class Members demand a trial by jury on all issues so triable.

Dated: December 27, 2024          Respectfully submitted,

/s/ *Taras Kick*
Taras Kick, CA Bar No. 143379
Tyler J. Dosaj, CA Bar No. 306938
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Taras@kicklawfirm.com
Tyler@kicklawfirm.com

Attorneys for Plaintiffs and the Putative Class

FIRST AMENDED CLASS ACTION COMPLAINT