JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 24-8372 JGB (DTBx)** | Date | March 31, 2026 |
|---|---|---|---|
| Title | ***Demario Preston, et al. v. Navy Federal Credit Union, et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING Defendants' Motion to Dismiss (Dkt. No. 36); (2) VACATING the April 6, 2026 Hearing; and (3) DIRECTING the Clerk to Close the Case (IN CHAMBERS)**

Before the Court is defendant Navy Federal Credit Union's motion to dismiss plaintiff's first amended complaint. ("Motion," Dkt. No. 36.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the April 6, 2026 hearing.

## I.   BACKGROUND

On September 27, 2024, plaintiffs Demario Preston, Richie Edquid, Andrea Rose Baker, Kaytlin Roque, Vette Gray, & Iliana Zuniga (collectively, "Plaintiffs") filed a putative class action complaint against defendant Navy Federal Credit Union ("Defendant" or "NFCU") and does 1-100. (Dkt. No. 1.) On December 6, 2024, Defendant filed a motion to dismiss. ("First Motion to Dismiss," Dkt. No. 18.) On December 27, 2024, Plaintiffs filed a first amended complaint. ("FAC," Dkt. No. 21.) Plaintiffs allege nine counts: (1) breach of contract, including the implied covenant of good faith and fair dealing; (2) unjust enrichment; (3) money had and received; (4) violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, et seq.); (5) violation of California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code. §§ 1750, et seq.); and (6) conversion. (Id. ¶¶ 116-166.)

On March 24, 2025, Defendant filed the Motion. (Motion.) In support of the Motion, Plaintiff filed a declaration of Fred B. Burnside with attached exhibits ("Burnside Decl.," Dkt.

No. 36-1), a declaration of Lisa Vance with attached exhibits ("Vance Decl.," Dkt. No. 36-2), and a request for judicial notice ("Request," Dkt. No. 37). On April 4, 2025, Plaintiffs filed an opposition to the Motion to Dismiss. ("Opposition," Dkt. No. 38.) In support of the Opposition, Plaintiffs filed a declaration of Tyler Dosaj and attached exhibits thereto ("Dosaj Declaration," Dkt. No. 39), a declaration of Demario Preston ("Preston Declaration," Dkt. No. 40), a declaration of Kaytlin Roque ("Roque Declaration," Dkt. No. 41), a declaration of Iliana Zuniga ("Zuniga Declaration," Dkt. No. 42), and evidentiary objections ("Objections," Dkt. No. 43). Defendant filed a reply to the Opposition on April 4, 2025. ("Reply," Dkt. No. 44.) Additionally, Defendant filed a reply to the Objections on April 10, 2025. ("Objections Reply," Dkt. No. 45.)

On January 26, 2025, Plaintiffs filed a notice of new authority. ("Notice," Dkt. No. 49.) On July 7, 2025, Defendant responded to the Notice. ("Response," Dkt. No. 41.) On July 8, 2025, Plaintiffs filed an objection to the Response. (Dkt. No. 52.) On August 1, 2025, Defendant filed a notice of first supplemental authority. ("Second Response," Dkt. No. 54.) On August 6, 2025, Plaintiffs filed an objection to the Second Response. (Dkt. No. 56.) On August 19, 2025, Defendant file a response to Plaintiff's objection to the Second Response. (Dkt. No. 57.) On August 20, 2025, Plaintiff filed an objection to Defendant's response to Plaintiff's objection to the Second Response. (Dkt. No. 58.)

On January 29, 2026, the Court requested supplemental briefing. (Dkt. No. 62.) On February 9, 2026, Defendant filed their supplemental brief. ("Defendant's Supplemental Brief," Dkt. No. 63.) On February 17, 2026, Plaintiffs filed their supplemental brief. ("Plaintiffs' Supplemental Brief," Dkt. No. 64.)

## II.    RELEVANT FACTUAL ALLEGATIONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this Motion. See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

### A.    Defendants' Practice of Imposing Non-Sufficient Fund Fees

In 2020 NFCU settled Lambert v. Navy Federal Credit Union, No. 1:19-cv-103-LO-MSN (E.D. Va.). (FAC ¶ 22.) That case alleged the same improper assessment of fees at issue here—namely, NFCU's assessment of overdraft fees or non-sufficient fund fees ("NSF Fees") on items that had previously triggered NSF fees ("Retry NSF Fees") in breach of contract. (Id. ¶ 21-22.) As part of the settlement, class members agreed to release claims during the Lambert class period from January 28, 2014 to October 27, 2020. (Id. ¶ 23.) NFCU attempted to change its contract terms with its January 2021 Consumer Account Agreement and its 2022 Business Account Agreement. (Id. ¶ 26.) However, NFCU continued assessing Retry NSF Fees after the end of the Lambert class period. (Id.) NFCU customers assessed Retry NSF Fees after the end

of the <u>Lambert</u> class period never received compensation for the Retry NSF Fees they incurred.[1] (<u>Id.</u>)

Plaintiff's checking accounts with NFCU are governed by the Consumer Account Agreement and Fee Schedule, along with additional account documents (collectively, "Account Documents"). (FAC ¶ 33.) These Account Documents provide the general terms of Plaintiffs' relationship with Navy Federal, and provide how NFCU will process transactions and assess overdraft fees and fees for non-sufficient funds ("NSF Fees"). (<u>Id.</u> ¶ 34.) The Account Documents state that a single fee can be assessed on checks, ACH transactions, and electronic payments. (<u>Id.</u> ¶ 35.) Nevertheless, NFCU regularly charges two or more fees per transaction or single item even though a customer only requested the payment or transfer once. (<u>Id.</u>) The Fee Schedule permitted NFCU to charge an NSF Fee in the amount of $29.00 for "checks and ACH debit." (<u>Id.</u> ¶ 38.) The Consumer Account Agreement states:

> Navy Federal is authorized to refuse checks that exceed funds available in the checking account. A fee will be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges for each refused check.

(<u>Id.</u> ¶ 41.) The Consumer Account Agreement states regarding ACH transactions that:

> Navy Federal may return debits to the checking account (e.g., an ACH payment) if the amount of the debit exceeds funds available in the checking account. A fee may be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item.

(<u>Id.</u> ¶ 42.) The Business Account Agreement contains terms "materially identical" to those in the Consumer Account Agreement. (<u>Id.</u> ¶ 43.) The Account Documents never discussed a circumstance where NFCU may assess fees more than once for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again. (<u>Id.</u> ¶ 47.) Reasonable customers understand any given authorization for payment to constitute "one, singular item, payment, or transaction." (<u>Id.</u> ¶ 49.) Reasonable customers understand based on the terms of the Account Documents that NFCU's reprocessing of checks or ACH payments are merely additional attempts to complete the original order or instruction for payment and are considered the same item or transaction such that additional fees will not be triggered. (<u>Id.</u> ¶ 50.) Nevertheless, NFCU assessed NSF fees multiple times, or an overdraft fee, following the assessment of an NSF fee on the same check or ACH transaction on the accounts of its members. (<u>Id.</u> ¶ 51.)

---

[1] Plaintiffs include, but do not limit, their allegations of improper assessment of NSF fees to the post-<u>Lambert</u> class period prior to NFCU's amendments of its contract terms. (FAC ¶ 26.)

Defendant attempted to materially change its Consumer Account Agreement in January 2021 to explicitly contract to allow it to charge Retry NSF Fees by including the following language in its January 2021 Consumer Account Agreement:

Navy Federal is authorized to refuse checks that exceed funds available in the checking account.  Each time we refuse a check for insufficient funds, we will assess a nonsufficient funds ("NSF") fee in the amount shown on Navy Federal's current Schedule of Fees and Charges for each refused check. A financial institution where you deposit a check, or a payee, may resubmit the check to Navy Federal even if we have already refused the check for insufficient funds in the checking account.  If the resubmitted check again exceeds the funds available in the checking account, Navy Federal again will refuse the check, resulting in an additional NSF fee. Thus, you may be charged multiple NSF fees in connection with a single check that has been refused for insufficient funds multiple times. . . . Navy Federal may return debits (e.g., ACH payments) submitted for payment against the checking account if the amount of the debit exceeds the funds available in the checking account.  Each time we return a debit for insufficient funds, we will assess a NSF fee in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item.  The entity that submitted the debit may submit another debit to Navy Federal even if we have already returned the prior debit for insufficient funds in the checking account.  If the resubmitted debit again exceeds the funds available in the checking account, Navy Federal again will return the debit, resulting in an additional NSF fee.  Thus, you may be charged multiple NSF fees in connection with a single debit that has been returned for insufficient funds multiple times.

(Id. ¶ 52.)  The February 2023 Fee Schedule also included for the first time the following language: "Non-sufficient funds fee (NSF) charged each time a check or ACH debit is presented and returned because of insufficient funds."  (Id. ¶ 53.)  In September 2022, Defendant attempted to materially change its Business Account Agreement to contract for its practice of imposing Retry NSF Fees.  (Id. ¶ 54.)

Plaintiffs did not receive notice that NFCU was amending the Account Agreement or Fee Schedule or receive a copy of the amended documents.  (Id. ¶ 56.)  Plaintiffs did not receive a copy of the Lambert settlement.  (Id.)  Other banks and credit unions engaging in the practice of imposing Retry NSF Fees including contractual terms that they would charge for the same item each time it was presented by including terms such as "per presentment" or "per each presentment."  (Id. ¶ 57.)

## B.    Plaintiffs' Experiences

NFCU charged Plaintiff Demario Preston a $29.00 NSF Fee on October 29, 2020. (Id. ¶ 67.)  This fee  was the result of the resubmission of a transaction that had previously triggered NSF Fees on October 23, 2020 and October 27, 2020.  (Id.)  Those two NSF fees were the results of resubmission of a transaction that triggered an NSF fee on May 5, 2021.

(Id.)  NFCU additionally charged Plaintiff Preston Retry NSF Fees on August 17, 2021; October 8, 2021; October 22, 2021; November 5, 2021; November 8, 2021; and November 10, 2021.  (Id.)

NFCU improperly assessed a Retry NSF Fee against Plaintiff Richie Edquid on July 1, 2022.  (Id. ¶ 68.)  NFCU improperly assessed Retry NSF Fees against Plaintiff Kaytlin Roque on December 29, 2020, and March 7, 2022.

NFCU improperly assessed Retry NSF Fees against Plaintiff Vette Gray on July 29, 2021; and January 11, 2022.  (Id. ¶ 70.)  NFCU improperly assessed Retry NSF Fees against Plaintiff Andrea Rose Baker as evidenced by the fact that NFCU deposited a refund of some of the Retry NSF Fees into Plaintiff Baker's accounts after she submitted a claim letter to NFCU.  (Id. ¶ 71.)  NFCU improperly assessed a Retry NSF Fee against Plaintiff Iliana Zuniga on June 30, 2022.  Additionally, NFCU intentionally obfuscates whether a fee is a Retry NSF Fee on monthly statements.  (Id. ¶ 69.)

## III.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"),[2] a party may bring a motion to dismiss for lack of subject-matter jurisdiction.  A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, without which, a federal district court cannot adjudicate the case before it.  See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  A party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence."  Sierra v. Dep't. of Family and Children Servs., 2016 WL 3751954, at *3 (C.D. Cal. Feb. 26, 2016) (quoting Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)).  Thus, a jurisdictional challenge can be either facial or factual.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true.  Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma, 644 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009) (citing Whisnant v. United States, 400 F.3d 1177, 1179 (9th Cir.2005)).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Safe Air for Everyone, 373 F.3d at 1039.  In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment."  White, 227 F.3d at 1242.  "Where jurisdiction is intertwined with the merits, [the Court] must 'assume [] the truth of the

---

[2] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

allegations in the complaint . . . unless controverted by undisputed facts in the record.'" <u>Warren</u>, 328 F.3d at 1139 (citing <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987)).

**B.      Rule 12(b)(2)**

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154-55 (9th Cir. 2006) (citing <u>Fireman's Fund Ins. Co. v. Nat. Bank of Coops.</u>, 103 F.3d 888, 893 (9th Cir. 1996)).  Because California authorizes jurisdiction to the fullest extent permitted by the Constitution, <u>see</u> Cal. Code Civ. P. § 410.10, the only question the Court must ask in this case is whether the exercise of jurisdiction over Defendant would be consistent with due process.  <u>Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1129 (9th Cir. 2003).

The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal citation omitted).  There are two recognized bases for exercising personal jurisdiction over a non-resident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum state are sufficiently "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question.  <u>See</u> <u>Helicopteros Nacionales de Colombia S.A. v. Hall</u>, 466 U.S. 408, 414–16 (1984).

Where a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to survive the motion to dismiss.  <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995).  The plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.  <u>AT&T v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996).

**C.      Rule 12(b)(3)**

Rule 12(b)(3) provides that a court may dismiss a claim for improper venue.  Once venue is challenged, the plaintiff has the burden of proving that venue is proper in this district.  <u>See</u> <u>Piedmont Label Co. v. Sun Garden Packing Co.</u>, 598 F.2d 491, 496 (9th Cir. 1979).  In deciding a motion under Rule 12(b)(3), the court may consider facts outside the pleadings and need not accept the pleadings as true.  <u>Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty</u>, 408 F.3d 1250, 1254 (9th Cir. 2005); <u>see also</u> <u>Argueta v. Banco Mexicano</u>, S.A., 87 F.3d 320, 324 (9th Cir. 1996).  If there are contested factual issues, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party or hold a pre-trial evidentiary

hearing on the disputed facts.  <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1138–39 (9th Cir. 2004).

**D.      Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see</u> <u>Ileto v. Glock Inc.</u>, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint— as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  <u>See</u> <u>Doe v. United States</u>, 419 F.3d 1058, 1062 (9th Cir. 2005); <u>ARC Ecology v. U.S. Dep't of Air Force</u>, 411 F.3d 1092, 1096 (9th Cir. 2005); <u>Moyo v. Gomez</u>, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed.  <u>See</u> <u>Mullis v. U.S. Bankr. Court</u>, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  <u>Id.</u>

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 570; <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).

//
//
//
//

**E.      Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'"  Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.  DISCUSSION

Defendants move to dismiss the Complaint with prejudice in its entirety for lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim under Rules 12(b)(1), (2), (3), and (6).  (See Mot. at 1.)  The parties agree that Plaintiffs' claims for unjust enrichment, conversion, money had and received, and violation of the UCL as to the unfair and unlawful prongs are preempted by federal law.  (Plaintiffs' Supplemental Brief at 1 n.1.)

**A.      Standing, Personal Jurisdiction, and Venue**

Defendant argues that all the Plaintiffs should be dismissed for lack of standing, personal jurisdiction, and/or venue.  (Mot. at 8-10.)  The Court first turns to the standing argument brought under Rule 12(b)(1).  (Id. at 8.)

**1.  Standing**

Standing requires an "injury in fact," that is "fairly . . . trace[able] to the challenged action," and that is "likely" to be "redressed by a favorable decision."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (internal citations omitted).  Defendant contends that Plaintiffs Preston and Baker are former NFCU customers who closed their checking accounts with negative balances greater than the amount of Retry NSF Fees they challenge.[3]  (Id.)  As a

---

[3] Plaintiffs object to the inclusion of their bank statements in the Vance Declaration because they "constitute matters outside of the pleadings . . . and are objectionable on hearsay grounds."  (Objections at 2.)  Furthermore, they argue that the bank statements cannot be judicially noticed under Fed. R. Evid. 201(b)(2) because they "do not derive from 'sources whose accuracy cannot reasonably be questioned'" nor can they be incorporated by reference because the FAC does not rely on those documents to establish Plaintiffs' claims  (Id.) Otherwise, Plaintiffs contend that the Court must convert the Motion into a motion for summary judgement.  (Id. at 3.)  The Court considers the bank statements only as to Defendant's challenged under 12(b)(1), (2), and (3).  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" for purposes of Rule 12 (b)(1).  Safe Air for Everyone v. Meyer,

result, any injury they suffered cannot be redressed by monetary damages or injunctive relief. (Id.)  The only argument Plaintiffs make in return is that discovery might uncover additional Retry NSF fees such that Preston and Baker would recover more than they currently owe.[4] (Opp. at 4.)  Because the account balances of Preston and Baker are greater than the fees they alleged NFCU improperly charged, the Court finds that plaintiffs Preston and Baker "fail[] to show redressability given the status of [their] account balance at the time of [their] closure." Dog Walkin Divas LLC v. Washington Fed., Inc., No. C20-1414-RSL-MLP, 2021 WL 2309675, at *3 (W.D. Wash. May 28, 2021), report and recommendation adopted, No. C20-1414-RSL, 2021 WL 2823171 (W.D. Wash. July 7, 2021), and report and recommendation adopted, No. C20-1414-RSL, 2021 WL 3667016 (W.D. Wash. Aug. 18, 2021).

Furthermore, Plaintiffs make no argument as to whether Preston and Baker have standing as to injunctive relief.  Accordingly, the Court considers that argument conceded.  See Angeles v. U.S. Airways, Inc., No. C 12-05860 CRB, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond amounts to a concession.")  Accordingly, the Court **DISMISSES** Plaintiffs Baker and Preston for lack of standing.

### 2.  Personal Jurisdiction

Defendant argues that the Court lacks personal jurisdiction over plaintiffs Zuniga, Preston, and Roque.  (Mot. at 9.)  The Court declines to consider any argument as to Preston as the Court has already dismissed him.  Defendant does not argue that the Court has general jurisdiction over Plaintiff and thereby concedes that only specific jurisdiction is at issue here.[5] (Opp. at 4-6.)

---

373 F.3d 1035, 1039 (9th Cir. 2004).  Likewise, "the court may consider evidence presented in affidavits to assist it in its determination" of personal jurisdiction under Rule 12(b)(2).  Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).  Finally, under Rule 12(b)(3) the Court "may consider evidence outside the pleadings."  eBay Inc. v. Digital Point Sols., Inc., 608 F. Supp. 2d 1156, 1161 (N.D. Cal. 2009) (citing Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir.2004)).  As to any hearsay objections, the bank statements were "kept in the ordinary course of Navy Federal's regularly conducted business." (Vance Decl. ¶ 1.)  Thus, the Court agrees that the bank statements satisfy the hearsay exception of Fed. R. Evid. 803(6).  (Objections Reply at 3.)  To the extent that Plaintiffs object to the this Court's consideration of the bank statements attached to the Vance Declaration under Rule 12(b)(1), (2), or (3), the Court **DENIES** the Objections.

[4] Plaintiffs cite, with no further explanation, to Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) in support of their argument.  (Opp. at 4.)  In Safe Air for Everyone, the plaintiff brought a lawsuit under the Resource Conservation and Resource Act to enjoin the open burning of Kentucky bluegrass.  373 F.3d at 1037-38.  It is not clear to the Court from the Opposition what the significance of this Ninth Circuit opinion is for the instant case.  Accordingly, the Court declines to consider it.

[5] Plaintiffs additionally argue pursuant to Rule 12(h)(1) that Defendant waived an argument on personal jurisdiction by failing to bring it in the First Motion to Dismiss.  (Opp. at

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk mg

In order to exercise specific jurisdiction over a non-resident defendant, the Court must find (1) that defendant either purposely availed himself of the privilege of conducting business in the forum state or purposely directed his activities at residents of the forum state; (2) that the cause of action arises out of or results from the non-resident defendant's forum-related contacts; and (3) that the forum's exercise of personal jurisdiction over the non-resident would be reasonable – i.e. would comport with "fair play and substantial justice." Burger King v. Rudzewics, 471 U.S. 462, 477-487 (1985); Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989). To meet the second prong, "Plaintiffs must show that they would not have suffered an injury 'but for' [Defendant's] forum related conduct." Myers v. Bennett L. Offs., 238 F.3d 1068, 1075 (9th Cir. 2001). The plaintiff bears the burden of satisfying the first two prongs of this test. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). If plaintiff succeeds in satisfying both of these prongs, then the burden shifts to the defendant to present a "compelling case" that the exercise of specific jurisdiction would not be reasonable. Advanced Skin & Hair, Inc. v. Bancroft, 858 F. Supp. 2d 1084, 1089 (C.D. Cal. 2012) (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.2004)). The parties only dispute whether Plaintiffs satisfy the second prong. (See Mot. at 9-10; Opp. at 4-6; Reply at 2.)

Defendant argues as to Plaintiff Roque that she was not located in California when she alleges that she incurred two Retry NSF Fees on December 29, 2020 and March 7, 2022. (Id. at 7 (citing FAC ¶ 69).) Plaintiffs respond that Defendant gave account access to and communicated with Plaintiff Roque in California. (Opp. at 6.) However, the declaration to which Plaintiffs cite provides no indication that Plaintiff Roque resided in California or had a California account between December 2020 and March 2022. (See Roque Decl.) Thus, Plaintiffs fail to satisfy the "but-for" test of the second prong of specific jurisdiction as to Plaintiff Roque. See Myers, 238 F.3d at 1075. The Court **DISMISSES** Plaintiff Roque.

As to Plaintiff Zuniga, Defendant argues that she lived in Ohio as evidenced by statements mailed to her address in Ohio and her voter registration.[6] (See Mot. at 8.) Plaintiffs

---

6.) However, plaintiffs Zuniga and Roque were not added as Plaintiffs until after the First Motion to Dismiss was filed. (See FAC.)

[6] Defendant includes Plaintiff Zuniga's voter registration status ("Voter Registration Status") and account statements in its Request for Judicial Notice. (Request, Ex. 22.) Plaintiffs did not file any opposition to the Request. The Court only reviews the Voter Registration Status. Under Fed. R. Evid. 201 a "court may judicially notice a fact that is not subject to reasonable dispute because it: **(1)** is generally known within the trial court's territorial jurisdiction; or **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Furthermore, a "court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (citation modified). Defendant provides an active hyperlink to the website of the Board of Elections of Hamilton County, Ohio to check voter registration status. (Request at 5.) Accordingly, the Court **GRANTS** the Request.

respond that Plaintiff Zuniga lived in California in 2022 when she incurred the Retry NSF Fee she challenges and currently resides in California. (Opp. at 5 (citing Zuniga Decl. ¶ 2).) For purposes of Rule 12(b)(2), the Court adopts Plaintiffs' version of the facts as true if not directly controverted, and conflicts between the parties' affidavits must be resolved in Plaintiffs' favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT&T, 94 F.3d at 588. Because the Court must resolve any disputes in Plaintiffs' favor, the Court finds that Plaintiff Zuniga has sufficiently alleged that this Court has personal jurisdiction over her claims.

### 3. Venue

Finally, Defendant argues that Plaintiffs cannot establish venue as to each plaintiff under Rule 12(b)(3). (Mot. at 10.) The Court only focuses on the three remaining Plaintiffs: Zuniga, Edquid, and Gray. Plaintiffs respond that Defendant waived this argument by failing to raise it in the First Motion to Dismiss as required by Rule 12(h)(1). (Opp. at 7-8.) However, the only one of these three plaintiffs who filed the Complaint was Edquid. (See Complaint.) Zuniga and Gray did not join this case until the FAC was filed. (See FAC.) Accordingly, the Court finds under Rule 12(h)(1) that Defendant only waived an argument of improper venue as to plaintiff Edquid. See Pratt v. Rowland, 769 F. Supp. 1128, 1131–32 (N.D. Cal. 1991) ("Federal Rule of Civil Procedure 12(h)(1) provides that a defense of improper venue is waived if omitted from the first defensive motion or answer to the complaint.")

The plaintiff has the burden of proving that venue is proper in this district once venue is challenged. See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979). Venue is proper in: "(1) a judicial district in which any defendant resides . . .; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). If a court determines that venue is incorrect, the court may dismiss or, alternatively "if it be in the interest of justice," transfer the case. 28 U.S.C. § 1406(a).

The parties focus on whether the Central District of California is the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." (See Mot. at 10; Opp. at 6-8; Reply at 3.) Plaintiffs argue that venue "does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate." (Opp. at 7 (citing Rodriguez v. California Highway Patrol, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000)).) Nevertheless, "*significant* events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." United Tactical Sys. LLC v. Real Action Paintball, Inc., 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015) (internal citation omitted).

The Court first evaluates whether Plaintiffs have established jurisdiction as to Plaintiff Zuniga. In her declaration, Plaintiff Zuniga asserts that she resided in Orange County, California when Defendant assessed a Retry NSF Fee against her on June 30, 2022. (Zuniga Decl. ¶ 2.)

Furthermore, she resided in California during the entirety of 2022 and has maintained a residence in Orange County since 2011. (Id.)  Finally, although she admits she "periodically" resides in Ohio, she has initiated transactions on her NFCU account in California and has patronized NFCU branches in California.  (Id.)  Defendant contends that venue is improper as to Plaintiff Zuniga because she is registered to vote in Ohio and received her bank statements in Ohio.  (Mot at 8, 10; Reply at 2-3.)  Defendant provides what appear to be screenshots of Plaintiff Zuniga's voter registration status as provided online by the Board of Elections, Hamilton County, Ohio.  ("Voter Registration," Request, Ex. 22.)  The date of the screenshots is January 3, 2025, and the screenshots provide no indication, nor does Defendant make any argument, as to how long Plaintiff Zuniga has been a registered voter in Ohio.  (Id.)  Thus, Defendant's Voter Registration exhibit does not demonstrate that Zuniga was not a California resident in 2022.  (Id.)  Although Plaintiff Zuniga received her bank statements in Ohio, the Court finds that Plaintiff Zuniga's use of her NFCU account both online and in person in Orange County, California and the imposition of the Retry NSF Fee while she was in Orange County, California are sufficient to meet Plaintiffs' burden that a "substantial part of the events or omissions giving rise to the claim occurred" in the Central District of California.  28 U.S.C. § 1391(b).  Thus, the Court concludes that venue is proper as to Plaintiff Zuniga.

        The Court next turns to whether Plaintiffs have established jurisdiction as to Plaintiff Gray.  Defendant contends that Plaintiff Gray admits his claims arose in another district.  (Mot. at 10 (citing FAC ¶ 7.)  Plaintiffs argue that venue is proper as to Plaintiff Gray, even though he does not reside in the Central District of California, because venue is proper for other Plaintiffs and Plaintiff Gray suffered from the same conduct in California.  (Opp. at 7.)  The parties dispute whether venue need to be established as to each named plaintiff.  (Mot at 10; Opp. at 7; Reply at 3.)  Plaintiffs cite to Armacost v. Depuy Synthes Sales, Inc., where the court held that venue need not be established as to each plaintiff so long as a "substantial part" of the events giving rise to the claims occurred in the judicial district where the court was located.  (Opp. at 7 (citing No. 18-CV-01331-YGR, 2018 WL 11471582, at *2 (N.D. Cal. June 7, 2018).)  Defendant responds that Armacost is an outlier case and the rule in a proposed class action is that "each named plaintiff must independently establish venue."  (Reply at 3 (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017)).

        The Court finds an opinion by Judge Kimberly J. Mueller in a factually similar case to be instructive.  Beyard v. Pentagon Fed. Credit Union, No. 1:21-CV-01063-KJM-SAB, 2025 WL 418706, at *1 (E.D. Cal. Feb. 6, 2025).  One of the two named plaintiffs in Beyard resided outside of the Eastern District of California and the defendant moved the court to dismiss that plaintiff's claims for improper venue.  Id. at *4.  Judge Mueller observed that no precedential opinions by the Supreme Court or the Ninth Circuit have decided whether each plaintiff in a multi-plaintiff case must satisfy the venue requirements.  Id. at *5.  Reviewing court opinions, she found that multiple district courts, along with treatises, have determined that the "general rule" is that each named plaintiff must satisfy the venue requirements.  Id.  However, she remarked that those court opinions often failed to state clearly the role that various federal venue statutes may have played in the holdings of those courts' opinions.  Id.  Judge Mueller next noted that other courts have not followed the general rule.  Id.  Ultimately, she found Armacost's reasoning to be

persuasive in so far as it read 28 U.S.C. § 1391(b)(2) to not require that each plaintiff fulfill the venue requirements where "'a substantial part' of the relevant 'events or omissions' occurred within" the relevant judicial district. Id. at *6. She found dispositive the fact that one of the named plaintiffs had established proper venue and the similarity between the claims of the two named plaintiffs. Id. She held that venue was proper as to the out-of-district named plaintiff. Id.

Here, the Court determined that Zuniga properly established venue (and held that Plaintiff waived any argument of improper venue as to Edquid). Furthermore, Gray brings nearly identical claims as Zuniga and Edquid. This Court follows Beyard and finds that venue is proper as to Gray.[7] The Court next turns to the merits of the claims brought by the remaining Plaintiffs—Plaintiffs Edquid, Zuniga, and Gray.

**B.      UCL and CLRA Claims**

Defendant argues that Plaintiffs agreed to a Virginia choice-of-law provision and therefore the UCL and CLRA claims arising under California state law should be dismissed. (Mot. at 9-10, 22.) Defendant contends that none of the Plaintiffs contracted with Defendant while in California, received the policies they challenge in California, were California citizens when they incurred the NSF Fees they challenge, received statements with those fees in California, or engaged in the transactions that led to those NSF fees with entities in California. (Id. at 9.) Defendant urges the Court to follow its prior decision in Phlaum v. Navy Fed. Credit Union, No. EDCV 24-0765 JGB (DTBX), 2024 WL 4181804, at *10 (C.D. Cal. Aug., 29, 2024), where the Court held in an analogous case that Virginia law governed. (Id. at 22; Reply at 3, 11.)  Plaintiffs respond by urging the Court to follow another case, Lloyd v. Navy Fed. Credit Union, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *6 (S.D. Cal. Apr. 12, 2018), where Judge Cynthia Bashant applied California law against Defendant as to the plaintiffs UCL and CLRA claims. (Opp. at 22-23.)

Plaintiffs do not argue that the Court should not follow its previous decision in Phlaum, where this Court specifically discarded Lloyd because Lloyd "considered Virginia law on facts

---

[7] Judge Mueller additionally found that the pendent-venue doctrine favors a single action. Beyard v. Pentagon Fed. Credit Union, No. 1:21-CV-01063-KJM-SAB, 2025 WL 418706, at *6 (E.D. Cal. Feb. 6, 2025). The Court here is less convinced that the pendent-venue doctrine allows for the adjudication of another plaintiff's claims where they are unable to independently establish venue. Only one of the cases to which Judge Mueller cited applies the pendent-venue doctrine to include an additional plaintiff with related claims in a case and it is an out-of-circuit case. Id. (citing Doe v. New York, No. 10-1792, 2012 WL 4503409, at *2–5 (E.D.N.Y. Sept. 28, 2012)). The other cases to which she cites only apply the pendent-venue doctrine to add additional claims brought by the same plaintiff(s) where the additional claims do not independently meet the venue requirements. See id. at *5-*6. The Court, however, need not determine whether the pendent-venue doctrine applies as it finds venue proper as to Plaintiff Gray.

distinguishable from the instant matter." No. EDCV 24-0765 JGB (DTBX), 2024 WL 4181804, at *10. Phlaum, like this case, dealt with Defendant's practice of charging Retry NSF Fees. Id. at *3. Lloyd, on the other hand, dealt with overdraft fees allegedly charged as a result of Defendant's practice of sequestering funds in a customer's account following a debit transaction. No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *1.

"A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." In re Facebook Biometric Info. Privacy Litig., 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016). This Court sits in the Central District of California. Under California law, choice-of-law agreements are enforced if the chosen state's law has a substantial relationship to the dispute. Reddy v. Mediscribes, Inc., 2020 WL 2220202, *3 (C.D. Cal. 2020). To determine whether a choice-of-law clause is enforceable, courts in California ask: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." Washington Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 916 (2001). "If either prong is met the choice of law will be enforced unless 'contrary to a fundamental policy' of the alternative state . . . and if the [alternative] state 'has a materially greater interest in the determination of the particular issue.'" Williams v. Facebook, Inc., 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018) (quoting Washington Mut. Bank, 24 Cal. 4th at 917). If either test is met, a court must next determine whether the choice of law (1) would be "contrary to fundamental policy" of California, and, if so, (2) whether California has a "materially greater interest" in the determination of the issues. See Pitzer Coll. v. Indian Harbor Ins. Co., 8 Cal. 5th 93, 100–01 (2019).

In Phlaum, this Court held that Virginia law applied because Defendant met its burden to establish that Virginia has a "substantial relationship" with the parties and Plaintiffs failed to "substantively respond." Phlaum, 2024 WL 4181804, at *10. Defendant established that Virginia has a "substantial relationship" with the parties because Defendants' "principal place of business is in Virginia, Plaintiffs' accounts are located in Virginia, Plaintiffs mailed their claim notices to Virginia; and Navy Federal's investigation occurred in Virginia." Id. Plaintiffs here make no argument that Virginia does not have a "substantial relationship" with Defendant. (See Opp.) Accordingly, the Court finds that Virginia has a "substantial relationship" with the parties.

Plaintiffs cite to Lloyd to argue that Virginia law conflicts with California law because the UCL and CLRA "reflect multiple fundamental policies" protecting California consumers and therefore California has a stronger interest in protecting its consumers. (Id. at 22-23 (citing Lloyd, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *5.) However, Plaintiffs do not describe the policies in detail or specify how they differ from Virginia law. Because Plaintiffs fail to sufficiently specify their objections, the Court is unable to determine here whether California has a "materially greater interest" in determining this contract dispute. Pitzer Coll., 8 Cal. 5th at 100–01 (2019). Plaintiffs' argument resembles the "passing reference" to Lloyd that this Court found insufficient in Phlaum. No. EDCV

24-0765 JGB (DTBX), 2024 WL 4181804, at *10.  Accordingly, the Court holds that Virginia law applies here and thereby **DISMISSES** Counts Four and Five.

### C.      Breach of Contract

Defendant asks the Court to follow <u>Lambert</u> because the Account Documents always allowed Defendant to charge Retry NSF Fees.  (Mot. at 18-19.)  Plaintiffs urge the Court to distinguish <u>Lambert</u>.  (Opp. at 17-18.)  Furthermore, Plaintiffs recommend that the Court reconsider its ruling in an identical case, which dismissed a breach of contract claim against Defendant under Rule 12(b)(6).  (Plaintiffs' Supplemental Brief at 1-2.)

To establish a breach of contract under Virginia law, Plaintiff must demonstrate: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." <u>Ramos v. Wells Fargo Bank, NA</u>, 289 Va. 321, 323 (2015).  The Account Documents state:

> Navy Federal posts items presented on your account in the following order: all money coming in (credits, deposits, etc.); ATM withdrawals; debit card transactions, also called Point of Sale (POS); Automated Clearing House (ACH) debits; and checks written . . . .

> Navy Federal is authorized to refuse checks that exceed funds available in the checking account.  A fee will be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges for each refused check . . . .

> Navy Federal may return debits to the checking account (e.g., an ACH payment) if the amount of the debit exceeds funds available in the checking account.  A fee may be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item.

(FAC, Ex. A., at 4.)

This Court recently held in a decision issued in a similar case filed against Defendant:

> Plaintiff's SAC alleges that at least some of the Returned Item Fees charged to him were "the result of the same item being re-submitted." (SAC ¶ 60.) The phrases "each refused check" and "each returned debit item" indicated a fee may be assessed every time a check or debit item is refused or returned, which plainly includes re-submitted requests based on the same check or debit.  A re-submitted check or debit is still, itself, a check or debit independent from the previously submitted check or debit. The language "each check" and "each ... debit" therefore covers those resubmissions, and fees may be charged each time under the CAA and Fee Schedule.  The Court in <u>Lambert v. Navy Fed. Credit Union</u> reached the same conclusion on an essentially identical set of facts. 2019 WL 3843064, at *3–5 (E.D. Va. Aug. 14, 2019).  Because, from the face of the

SAC, the Court is able to determine the meaning of the account documents and their inconsistency with Plaintiff's theory of breach, the issue can be disposed of at this stage. While Plaintiff alleges that NFCU breached, the Court is not obligated to accept that conclusion and the Court finds the plain language of the contract demonstrates no breach occurred. As such, Plaintiff has failed to state a claim upon which relief can be granted for breach of contract.

Phlaum v. Navy Fed. Credit Union, No. EDCV 24-0765 JGB (DTBX), 2025 WL 2946896, at *3 (C.D. Cal. Oct. 10, 2025).

Plaintiffs primarily argue that this Court should distinguish Lambert because the parties agreed on the definition of "item" in Lambert.[8] (Opp. at 17.) However, the Lambert court conducted its own analysis of the contractual language and determined that: "it is clear from the contract that [Automated Clearing House] debit requests, such as the two submitted by Plaintiff's insurer, qualify as 'debit items.'"[9] Lambert, 2019 WL 3843064, at *3. Furthermore, the Lambert court concluded that "when the terms of the contract are read together and in context, the contract unambiguously provides that 'each' time Navy Federal Credit Union 'returns' a request for payment (a 'debit item') for insufficient funds, a nonsufficient fund fee may be assessed without regards to whether the returned debit item was a re-presentment of a previously rejected request." Id. at *5. Having reviewed the contractual language at issue here,

---

[8] Plaintiffs additionally point to multiple decisions which they claim support their position that Lambert is an "outlier." (Opp. at 17.) However, none of those cases analyzes the language at issue here because in none of those cases was NFCU a defendant. (See Dosaj Decl. ¶ 2.)

[9] The Lambert court reached this conclusion after analyzing the contractual definition of "item": "In disclosing the order in which transactions are posted to a member's account, the contract lists all of the following as types of 'items': 'all money coming in (credits, deposits, etc.); ATM withdrawals; debit card transactions, also called Point of Sale (POS); *Automated Clearing House (ACH) debits*; and checks written.'" Lambert v. Navy Fed. Credit Union, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *3 (E.D. Va. Aug. 14, 2019). That contractual definition might explain why the parties agreed on the definition of "item" in Lambert. Critically, the existence of that definition distinguishes this case and Lambert from Mawyer v. Atl. Union Bank, No. 3:21-CV-726 (DJN), 2022 WL 1049311 (E.D. Va. Apr. 7, 2022), to which Plaintiffs cite. (Opp. at 17.) The Mawyer court first disregarded Lambert because the parties in Lambert agreed on the definition of "item"—an argument this Court already discarded. Furthermore, it does not appear from the opinion that the contract at issue in Mawyer included a definition of "item" beyond a parenthetical: "The law permits us to pay items (such as checks or drafts) drawn on your account in any order . . ." Id. at *1. With only a spare contractual definition of "item," the Mawyer court concluded that the contract was "ambiguous as to whether an item functions as a request for payment (as Defendant argues) or an accountholder's instruction to pay (as Plaintiff argues)." Id. at *4. For the reasons described above, the contractual language at issue in the instant case is not ambiguous.

---

the Court sees no reasons to distinguish <u>Lambert</u> or <u>Phlaum</u>.  The Court finds that the contract language is not ambiguous and therefore Plaintiffs have failed to state a claim for breach of contract.

Because the Court finds that Defendant did not breach the contract, Plaintiffs' claim for breach of the covenant of good faith and fair dealing claim "must be dismissed because [NFCU] honestly exercised its contractual right to charge Plaintiff a nonsufficient fund fee."  <u>Phlaum</u>, 2025 WL 2946896, at *3 (citing <u>Lambert</u>, 2019 WL 3843064, at *5).  Accordingly, the Court **DISMISSES** Count One for failure to state claim.

## D.    LEAVE TO AMEND

Generally, leave to amend under Rule 15 should be granted with "extreme liberality." <u>Eminence Cap., L.L.C.</u>, 316 F.3d at 1051.  However, the Court may deny leave to amend where "further amendment would be futile."  <u>Rutman Wine Co. v. E. & J. Gallo Winery</u>, 829 F.2d 729, 738 (9th Cir. 1987).  The Court determines that Plaintiffs cannot cure their claims of breach of contract, including the breach of the covenant of good faith and fair dealing; violation of the UCL; or violation of the CLRA through amendment.  Accordingly, the Court **DENIES** leave to amend.

## V.    CONCLUSION

For the above reasons, the Court **GRANTS** the Motion and **DISMISSES THE FAC WITHOUT LEAVE TO AMEND**.  The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**